IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

| | | |
|---|---|---|
| DAVID ROBERT BENTZ, #S03210, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 14-562-MJR-SCW |
| | ) | |
| SGT. QUALLES, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S AMENDED COMPLAINT

NOW COME the Defendants, KENT BROOKMAN, NATHANIEL MAUE, WILLIAM QUALLS, RYAN SADLER, MICHAEL SAMUEL, and MICHAEL SCHNICKER, by and through their attorney, Lisa Madigan, Attorney General of the State of Illinois, and hereby file their Answer and Affirmative Defenses to Plaintiff's Amended Complaint (Doc. 33), and in support thereof, state as follows:

## JURISDICTION

1.     This court has jurisdiction over the Plaintiff's claims of violations of federal constitutional rights under 28. U.S.C. Section 1331<i> and 1343;

**RESPONSE:   Defendants admit the allegation in this paragraph.**

2.     The court has supplemental jurisdiction over the Plaintiff's state law tort claims under 28 U.S.C. Section 1367.

**RESPONSE:   Defendants deny the allegation in this paragraph.**

## PARTIES

3.   The Plaintiff, David Bentz, was incarsarated [sic] at the Menard Correctional Center during the events described within this complaint.

**RESPONSE:   Defendants admit that Plaintiff was incarcerated at Menard Correctional Center during the period of time encompassed by the events described within this Complaint; however, Defendants response is not to be construed as admitting any of the events described within Plaintiff's Complaint.**

4.   Defendant, Qualls is a Seargeant [sic] at Menard Correctional Center, is employed at Menard Correctional Center.   He is sued in his individual and official capacity.

**RESPONSE:   Defendant Qualls admits that he is a Sergeant currently employed at Menard Correctional Center.   Defendant admits that Plaintiff has sued him in his individual and official capacity; however, Plaintiff's claim against Defendant Qualls in his official capacity is barred by sovereign immunity and the Eleventh Amendment.**

5.   Defendants, Samuels, Brookman, and Allen are Lieutenants at Menard Correctional Center, are employed at Menard Correctional Center.   They are sued in their individual and official capacities.

**RESPONSE:   Defendants Samuel and Brookman admit they are Lieutenants currently employed at Menard Correctional Center.   Defendants Samuel and Brookman admit that Plaintiff has sued them in their individual and official**

**capacities; however, Plaintiff's claim against Defendants in their official capacity is barred by sovereign immunity and the Eleventh Amendment.**

6.   Defendant Allsup is a counselor at Menard Correctional Center, is employed at Menard Correctional Center.  She is sued in her individual and official capacity.

**RESPONSE:  Pursuant to the Court's July 11, 2014 Memorandum and Order, Plaintiff was not given leave to amend his complaint to add Counselor Allsup as a Defendant in this matter.  (Doc. 32 at 3.)  Therefore, Defendants do not respond to the allegations contained herein.**

7.   Defendant Jane Doe is a nurse at Menard Correctional Center, is employed at Menard Correctional Center.  She is sued in her individual and official capacity.

**RESPONSE:   Defendants lack knowledge regarding the allegations in this paragraph.**

8.   Defendants Maue, Schnicker, Ryan Sadler, T. Monroe, Mr. Monroe, Lindenberg, John Doe #1, John Doe #2, John Doe #3, John Doe #4, John Doe #5, and Campbell are correctional officers at Menard Correctional Center, are employed at Menard Correctional Center.   They are sued in their individual and official capacities.

**RESPONSE:   Defendants Maue, Schicker and Sadler admit that they are correctional officers currently employed at Menard Correctional Center. Defendants Maue, Schnicker, and Sadler admit that Plaintiff has sued them in their individual and official capacities; however, Plaintiff's claim against**

**Defendants in their official capacity is barred by sovereign immunity and the Eleventh Amendment.**

9.   Defendant John Doe #6 is a Lieutenant of Internal Affairs at Menard Correctional Center, is employed at Menard Correctional Center.  HE is sued in his individual and official capacity.

**RESPONSE:   Defendants lack knowledge regarding the allegations in this paragraph.**

## COLOR OF STATE LAW/JOINDER

10.   All Defendants have acted and/or continue to act under color of law at all times relevant to this complaint.   This multi-claim multi-defendant complaint is properly jointed where the claims did arise from the same factual situation, where the claims against Defendants did also rise out of the same transaction, occurrence, or series of transactions or occurrences, and where a common question of law or fact does exist between the Defendants.

**RESPONSE:   Defendants admit they acted under the color of law at all times relevant to this Complaint.   Pursuant to the Court's July 11, 2014 Memorandum and Order, Plaintiff was denied leave to amend his complaint as to the two new retaliation claims against Lindenberg and Counselor Allsup.   (Doc. 32 at 3.) Therefore, not all the claims alleged within this Amended Complaint were properly joined.**

## PREVIOUS LAW SUITS [SIC]

11.     Plaintiff currently has a civil action in federal court relating to Plaintiff's imprisonment and in the court of claims as follows: A-I[1]

**RESPONSE:   On information and believe obtained from the undersigned, Defendants admit that details regarding the nine lawsuits Plaintiff listed are accurate; however, Defendants Maue, Schnicker, Samuel, Brookman, and Qualls lack personal knowledge regarding these details of Plaintiff's nine listed lawsuits.**

**Defendant Sadler is also a defendant in Plaintiff's pending lawsuit *Bentz v. Bledsol,* no. 13-cv-573, and therefore, admits the accuracy of the information pertaining to that lawsuit.   Defendant Sadler lacks knowledge regarding the details pertaining to Plaintiff's additional lawsuits listed.**

## EXHAUSTI ON OF ADMINISTRATIVE REMEDIES

12.     Plaintiff has exhausted his available administrative remedies as to the extent they were made available with respect to all claims and all Defendants in this Complaint.

**RESPONSE:   Defendants lack knowledge regarding Plaintiff's grievances; however, the relevant grievance logs from Menard Correctional Center and the timing of the filing of Plaintiff's Complaint relative to when his claims arose demonstrate that Plaintiff failed to exhaust his administrative remedies prior to filing suit.   To the extent this paragraph may be construed as alleging**

---

[1] Plaintiff provided details regarding the docket number, case name, and disposition of the nine cases listed in this portion of his Amended Complaint that are omitted herein.

**Defendants made the administrative remedies unavailable to Plaintiff, Defendants deny any such allegations.**

<u>**STATEMENT OF CLAIMS**</u>

13.     This is a civil rights complaint filed by David Robert Bentz, pro-se, a state of Illinois prisoner under 42 U.S.C. Section 1983, alleging a civil conspiracy in conjunction with United States Constitutional rights violations under the First and Eighth Amendments Plaintiff invokes the supplemental/pendent jurisdiction of this court.

<u>**RESPONSE:**</u>   **Defendants admit that Plaintiff is an inmate within the Illinois Department of Corrections and that pro-se he filed the present civil rights Complaint pursuant to 42 U.S.C. § 1983.   Defendants admit that Plaintiff has alleged a civil conspiracy and that his rights were violated under the First and Eighth Amendments of the United States Constitution.**

14.     The Plaintiff, Bentz, is a long term general population prisoner currently being housed at Menard Correctional Center, a maximum security facility.

<u>**RESPONSE:**</u>   **Defendants admit the allegation in this paragraph.**

15.     The gravamen of this multi-claim complaint is that Bentz has been conspicuously denied rights and privlages [sic], subjected to cruel and unusual punishment <and other such constitutional and state law deprivations> due to Defendants [sic] excessive use of force on Plaintiff, and due to the obvious deliberate indifference to Bentz's medical needs and/or safty [sic] subsequent to the excessive use of force.

**RESPONSE:    Defendants deny that Plaintiff has been denied rights and privileges or subjected to cruel and unusual punishment due to Defendants excessive use of force on Plaintiff or due to deliberate indifference to Plaintiff's medical needs.    Defendants further deny any constitutional violations whatsoever and further deny any state law deprivations occurred with respect to Plaintiff.**

16.    On May 11, 2014, Plaintiff was housed within Menard Correctional Centers [sic] housing unit, North One on eight Gallery, cell #835 <N-I-835>.

**RESPONSE:   Defendants admit the allegation in this paragraph.**

17.    On May 11, 2014, Eight <8> Gallory [sic] was on a line movement to the chow hall for lunch at or about 9 am to 9:30 am, where offenders when passing officers are to hold up their I.D. cards so that staff can see your face and I.D. card and offenders are to look at the officer for I.D. check when line movements are going on when exiting the offenders gallory [sic].   During the aforementioned line movement to the chow hall, Plaintiff showed his I.D. Card to Defendant Maue, where Plaintiff did not say anything to anyone and without provoktion [sic] Defendant Maue told Plaintiff to come here so Moue [sic] could talk to Plaintiff.   Defendant, Maue asked Plaintiff what size he was Plaintiff asked what he was talking about, where Defendant Moue [sic] went on to tell Plaintiff that the next time Plaintiff came by Defendant Maue that he <Maue> would "slap" Plaintiff across his "mother fucking face!"

**RESPONSE:   Defendants admit that on May 11, 2014, Eight Gallery was on a line movement to the chow hall for lunch at or about 9 am to 9:30 am.   Defendants**

**admit that offenders are to hold up their I.D. cards when passing officers so that staff can see an inmate's face and I.D. Defendants admit that this I.D. check occurs when line movements are going on when inmates are exiting the gallery. Defendants Maue and Qualls deny the remaining allegations in this paragraph. Defendants Schnicker, Sadler, Brookman, and Samuel lack knowledge regarding the remaining allegations in this paragraph.**

18.    During the aforementioned threat of assault by Defendant, Maue there were several officers to include Defendants Qualls, Schnicker, T. Monroe, and others standing within feet of Plaintiff and Defendant Maue, where the aforementioned Defendants simply did nothing.

**RESPONSE:   Defendants Maue, Qualls and Schnicker deny the allegations in this paragraph.   Defendants Brookman, Sadler, and Samuel lack knowledge regarding the allegations in this paragraph.**

19.    After Plaintiff exited the N-I Cell House Plaintiff tryed [sic] to talk to Defendant, Lieutenant, Brookman, where Brookman told Plaintiff to "Keep moving I don't care."   Plaintiff kept onword [sic] to the chow hall.

**RESPONSE:   Defendant Brookman denies the allegation in this paragraph. Defendants Maue, Schnicker, Qualls, Sadler, and Samuel lack knowledge regarding the allegation in this paragraph.**

20.    On the way back from chow hall and after Plaintiff entered into N-1 Cell House Plaintiff proceeded to Eight <8> Gallory [sic] towards his <Plaintiff's> cell N-I-835, where when Plaintiff got to Six <6> Gallory [sic] Defendant, Maue in the

pressense [sic] of Defendants, Qualls, Schnicker, T.Monroe, John Doe #1, and John Doe #2, where Maue stopped Plaintiff again without any kind of provoktion [sic] and told Plaintiff, "I know you are a pencil pusher and that you file law suits [sic], I don't give a fuck."  Defendant, Maue several times pretended like he was going to slap Plaintiff in the face, where none of the surounding [sic] Defendants aforementioned did and/or said anything.

**RESPONSE:  Defendants Maue, Qualls, and Schnicker deny the allegations in this paragraph.  Defendants Sadler, Samuel, and Brookman lack knowledge regarding the allegations in this paragraph.**

21.    Plaintiff proceeded back to his cell without saying a word.  When Plaintiff got to Eight <8> Gallory [sic] Defendant's [sic] Maue, and Qualls called for Plaintiff to come back down to Six <6> Gallory, where Defendant's [sic] stopped all of the offenders in the Eight Gallory [sic] line so Plaintiff could come back down to the Six <6> Gallory [sic] Flag.

**RESPONSE:    Defendants Maue and Qualls deny the allegations in this paragraph.    Defendants Sadler, Samuel, Schnicker, and Brookman lack knowledge regarding the allegation in this paragraph.**

22.    When Plaintiff stepped off of the stairs and onto the Six <6> Gallory [sic] Flag without provoktion [sic] Defendants, Qualls, John Doe #1, and John Doe #2, did knowingly, maliciously, intentionaly [sic] used [sic] excessive force by assaulting Plaintiff, where Defendant's [sic] aforementioned did punch and grab Plaintiff in the back of the neck and pushed and slamed [sic] Plaintiff face first into the wall on the Six

<6> Gallory [sic] Flag.   During this time Defendant's [sic] Ryan Sadler, T. Monroe, Schnicker, and others to include Defendant, Maue, where over and/or about a dozzen [sic] offenders from Eight <8> Gallory [sic] saw the aforementioned events.   The aforementioned Defendant's [sic] placed Plaintiff by the Six <6> Gallory [sic] shower and then proceeded to finish running the rest of the Eight <8> Gallory [sic] from lunch to their cells.

**RESPONSE:   Defendants Qualls, Sadler, Schnicker, and Maue deny the allegations in this paragraph.   Defendants Brookman and Samuel lack knowledge regarding the allegations in this paragraph.**

23.    After the aforementioned Defendants finished the Eight <8> Gallory [sic] chow line Defendant Maue grabed [sic] Plaintiff by the back of Plaintiff's shirt and twisted it up until Plaintiff was being strangaled [sic] so that Plaintiff could not breath [sic] draging [sic] and pushing Plaintiff to the other side of the cell house flag, Five <5> Gallory [sic] Flag on the workers side still in full view of the Defendants Schincker, T. Monroe, Qualls, John Doe #1, John Doe #2, and others on the Six <6> Gallory [sic] Flag do [sic] to the fact that the Five <5> Gallory [sic] Flags are on the same floor.

**RESPONSE:   Defendants Qualls, Schnicker, and Maue deny the allegations in this paragraph.   Defendants Brookman, Sadler, and Samuel lack knowledge regarding the allegations in this paragraph.**

24.    When Defendant Maue got Plaintiff to the Five <5> Gallory Flag Defendant Maue Grabed [sic] Plaintiff by the neck/throught [sic] choking and strangling

Plaintiff, picking Plaintiff up by the neck and repeatedly slaming [sic] Plaintiff's head into the wall telling Plaintiff that he <Maue>, saying, "I am going to kill you!"

**RESPONSE:   Defendants Maue denies the allegations in this paragraph. Defendants Sadler, Schnicker, Brookman, Samuel, and Qualls lack knowledge regarding the allegations in this paragraph.**

25.   When Defendant Maue grabed [sic] Plaintiff by the neck/throught [sic] Defendant's [sic] Qualls, and John Doe #1 proceeded to assist Defendant Maue by grabing [sic] the back of Plaintiff's shirt and strangling Plaintiff and slaming [sic] Plaintiff's head repeatedly into the wall while continuing to hold Plaintiff off of the floor by Plaintiff's neck until Plaintiff passed out.

**RESPONSE:   Defendants Maue and Qualls deny the allegations in this paragraph.   Defendants Schnicker, Brookman, Sadler, and Samuel lack knowledge regarding the allegations in this paragraph.**

26.   When Plaintiff came to from passing out Defendant's [sic] Maue, Qualls, and John Doe #1 were still assaulting Plaintiff in the aforementioned maner [sic] and still telling Plaintiff, "I am going to kill you!"

**RESPONSE:   Defendants Maue and Qualls deny the allegations in this paragraph.   Defendants Schnicker, Brookman, Sadler, and Samuel lack knowledge regarding the allegations in this paragraph.**

27.   During the aforementioned events in full view of Defendant's [sic] Schnicker, T. Monroe, John Doe #2, John Doe #3, and John Doe #4 where Defendant's [sic] simply stood by and watched and did nothing to assist Plaintiff, where Defendant's

[sic] John Doe #3 and John Doe #4 were on the Six <6> Gallory [sic] Flag in full view of the aforementioned events and furthermore failed to protect Plaintiff from the use of excessive force by aforementioned Defendant's Maue, Qualls, John Doe #1, and John Doe #2.

**RESPONSE:   Defendants Schnicker, Maue, and Qualls deny the allegations in this paragraph.   Defendants Samuel, Brookman, and Sadler lack knowledge regarding the allegations in this paragraph.**

28.    Then after the Defendant's [sic] Maue, Qualls, John Doe #1, and John Doe #2 were done assaulting Plaintiff, Plaintiff made several request for medical care where said requests were ignored by all aforementioned Defendants within this Complaint.

**RESPONSE:   Defendants deny the allegations in this paragraph.**

29.    Plaintiff was allowed to proceed back to his cell <N-I-835> where Defendants Sadler and Mr. Monroe opened Plaintiff's cell to let Plaintiff into his cell where Defendant Mr. Monroe after Plaintiff requested for medical care opened Plaintiff's cell and stepped in behind Plaintiff and told Plaintiff that if Plaintiff reported the above events that he <Mr. Monroe> would beat Plaintiff's ass.  During this time Defendant Sadler stood just behind Mr. Monroe and said and did nothing and simply condoed the actions of Defendant Mr. Monroe.

**RESPONSE:   Defendant Sadler denies the allegations in this paragraph. Defendants Maue, Brookman, Samuel, Schnicker, and Qualls lack knowledge regarding the allegations in this paragraph.**

30.     Shortly after Plaintiff was placed within his cell N-I-835, Plaintiff was allowed to go to yard with the rest of the Eight <8> Gallory [sic] offenders, where on the way to the East Yard outside of the gym Plaintiff stopped to talk to Defendant, Lieutenant, Samuales [sic].   Plaintiff informed/requested to be taken to Health Care because Plaintiff needed medical care where Plaintiff informed Defendant Samuels [sic] of the above assault that had just happened by Defendants Maue, Qualls, John Doe #1, and John Doe #2 within North One Housing Unit, and that Plaintiff wanted to talk to internal affairs <I/A>.

**RESPONSE:   Defendants admit that Plaintiff was allowed to go to the yard with the rest of the Eight Gallery offenders.   Defendant Samuel admits he may have briefly spoke with Plaintiff, but denies Plaintiff's characterization of that conversation.   Defendants Maue and Qualls deny they assaulted Plaintiff, but lack knowledge of the remaining allegations in this paragraph.   Defendants Schnicker, Sadler, and Brookman lack knowledge regarding the allegations in this paragraph.**

31.     Defendant, Lieutenant Samuels [sic] told Plaintiff to go wait for him inside of the gym until he <Samuels> [sic] was done running yard lines.

**RESPONSE:     Defendant Samuel denies the allegation in this paragraph. Defendants Qualls, Maue, Sadler, Brookman, and Schnicker lack knowledge regarding the allegations in this paragraph.**

32.     After Defendant Samuels was done with the North One yard lines Samuels [sic] came into the gym and told Plaintiff to go to yard and that he <Samuels>

[sic] would call internal affairs and take Plaintiff to talk to internal affairs and to medical/Health Care after yard and for Plaintiff to hang back at the end of the line, where Plaintiff was placed onto the East Yard with the Eight <8> Gallory [sic] offenders from North One.

**RESPONSE:   Defendant Samuel denies the allegations in this paragraph. Defendants Maue, Sadler, Brookman, Qualls, and Schnicker lack knowledge regarding the allegations in this paragraph.**

33.    While Plaintiff was on the East Yard Plaintiff used phone # ID on May 11, 2014, to call a Tracy Turner a friend of Plaintiff's and asked her to call the Illinois Department of Corrections about the aforementioned events and that Plaintiff was in fear for his life and had been threatened to be killed by Defendants as above described within this Complaint.

**RESPONSE:   Defendants lack knowledge regarding the allegations in this paragraph; however, Defendants deny they threatened to kill Plaintiff as Plaintiff has described within this Complaint.**

34.    Upon returning to N-I from the East Yard Plaintiff again stopped and talked to Defendant, Lieutenant Samuels [sic] and for the second time Plaintiff requested to be taken to Health Care and to Internal Affairs <I/A> with regardes [sic] to the excessive use of force and the threats to Plaintiff's life as above described within this Complaint.

**RESPONSE:   Defendant Samuel admits that he spoke to Plaintiff, but denies Plaintiff's characterization of the conversation that occurred.   Defendants Qualls,**

Schnicker, Brookman, Sadler, and Maue lack knowledge regarding the allegations in this pargarph.

35.    Defendant Samuels [sic] told Plaintiff to go back to his cell house or receive a disciplinary ticket, where Plaintiff again informed Samuels that Plaintiff was in fear for his life and in fear of being assaulted again, and that Plaintiff was simply putting Plaintiff back into an unsafe situation.

**RESPONSE:   Defendant Samuel admits that he spoke to Plaintiff, but denies Plaintiff's characterization of the conversation that occurred.   Defendants Qualls, Schnicker, Brookman, Sadler, and Maue lack knowledge regarding the allegations in this paragraph.   However, Defendants deny that Plaintiff was assaulted and further deny that Plaintiff was being put into an unsafe situation.**

36.    Defendant Samuels [sic] told Plaintiff that internal affairs would come talk to Plaintiff after Plaintiff had returned to his cell house North One, when Plaintiff asked Samuels [sic] who in internal affairs that was that Samuels [sic] had talked to Defendant Samuels [sic] told Plaintiff that it did not matter.'

**RESPONSE:   Defendant Samuel denies the allegations in this paragraph. Defendants Qualls, Sadler, Maue, Brookman, and Schnicker lack knowledge regarding the allegations in this paragraph.**

37.    ON the way back to North One from the East Yard Plaintiff over heard [sic] Defendant Samuels tell a John Doe Officer that he <Samuels> [sic] did not call internal affairs and would not and that Bentz <Plaintiff> was full of shit and he <Samuels> [sic] did not believe Plaintiff.

**RESPONSE:** **Defendant Samuel denies the allegations in this paragraph. Defendants Qualls, Sadler, Maue, Brookman, and Schnicker lack knowledge regarding the allegations in this paragraph.**

38.    On May 11, 2014, later that day on the 3 pm to 11 pm shift on the way back from the dinner chow line Plaintiff stopped and talked to Defendant, Lieutenant Allen and informed Allen that Plaintiff needed to see medical staff and be taken to Health Care because of Plaintiff's jaw and neck where Allen asked Plaintiff what happened and Plaintiff informed Allen of all of the above aforementioned within this Complaint.  Allen told Plaintiff that he <Allen> would get Plaintiff to Health Care and also to internal affairs under one condition that Plaintiff would not make a case about it and/or tell the medical staff what happened otherwise Plaintiff would not receive anything.

**RESPONSE:** **Defendants lack knowledge regarding the allegations in this paragraph.**

39.    On May 11, 2014 at about 8:45 pm Plaintiff's Eight <8> Gallory [sic] Officer, Defendant John Doe #5 and another Doe Officer came to Plaintiff's cell N-1-835 and told Plaintiff to get dressed, where John Doe #5 handcuffed Plaintiff behind the back and escorted Plaintiff downstairs.  Once downstairs Defendant Allen took Plaintiff behind the Sergeants [sic] cage to see a Jane Doe Nurse, where Defendant Allen stood in the doorway to make sure that Plaintiff did not tell the Nurse what happened. The Nurse did not give Plaintiff any pain medication for the swelling and chronic pain in Plaintiff's neck and jaw area regardless of Plaintiff's request for pain

medication, where Plaintiff never received x-rays and/or pain medication and was never called back to Healthcare regardless of Plaintiff's multiple request after the aforementioned visit with the Nurse.

**RESPONSE:   Defendants lack knowledge regarding the allegations in this paragraph.**

40.     After Plaintiff left from the above visit with the Jane Doe Nurse Defendant John Doe #5 and another Doe Officer stopped Plaintiff at the top of Eight <8> Gallory [sic] and told Plaitniff to sit, where Defendant Allen came up to talk to Plaintiff and told Plaintiff that he <Allen> was not going to call internal affairs because he <Allen> did not want to go over Defendant Samuels [sic] head, where Plaintiff was returned to Cell N-I-835.  Defendant Allen told Plaintiff that he <Allen> would take Plaintiff to internal affairs the next day if Plaintiff had not talked to them, the next day of May 12, 2014, which has yet to happen.

**RESPONSE:   Defendants lack knowledge regarding the allegations in this paragraph.   However, Defendant Samuel denies that there was anything to "go over [his] head" about.**

41.     On May 12, 2014, Defendant Allen did not take Plaintiff to see internal affairs as promised the day before, where Defendant Allen knew that he <Allen> would not be assigned to Plaintiff's cell house N-I and/or knew he <Allen> had the day off, where Plaintiff's aforementioned issues to include medical were never addressed.

**RESPONSE:   Defendants lack knowledge regarding the allegations in this paragraph.**

42.     On May 12, 2014, Plaintiff placed within the institutional mail to the Eight <8> Gallery, N-I Officer John/Jane Doe a [sic] emergency grievance in a sealed envelope addressed to the Chief Administrator Warden, Kimberly Butler, and a written request to internal affairs Lieutenant, John Doe #6 and or the Major of Internal Affairs addressed to the above in a sealed envelope and a written request for pain medication and x-rays for Plaintiff's fractured jaw and chronic pain by placing said request within a sealed envelope addressed to Health Care.

**RESPONSE:     Defendants lack knowledge regarding the allegations in this paragraph.**

43.     Furthermore on May 11, 2014 Plaintiff sent two <2> letters out one to Gary Benz and the second to Diane Bentz and a request to Health Care detailing the above conduct of the aforementioned Defendants' and/or Plaintiff's serious medical need.

**RESPONSE:     Defendants lack knowledge regarding the allegations in this paragraph.**

44.     On May 13, 2014, on the way to the chow hall Plaintiff gave the cell house Lieutenant, Defendant Brookman a request for medical care for Plaintiff's fractured jaw and chronic pain to Plaintiff's neck and jaw area and its progressively worsoning [sic] state, and also to be taken to talk to internal affairs regarding the aforementioned assault on Plaintiff within this Complaint.

**RESPONSE:   Defendant Brookman denies the allegations in this paragraph. Defendants Maue, Qualls, Samuel, Sadler, and Schnicker lack knowledge regarding the allegations in this paragraph.**

45.     When Plaintiff returned from the lunch chow hall Plaintiff talked to Defendant Brookman, where Brookman told Plaintiff that his request was filed into the trash and that Plaintiff's other four <4> requests the night before were forwarded to the trashcan, where Defendant, Brookman refused to take Plaintiff to talk to internal affairs and /or see that Plaintiff receive medical care for Plaintiffs' fractured jaw and obviouse [sic] swelling and chronic pain.   Defendant Brookman refused to take any kind of action to remedie [sic] Plaintiff's aforementioned issues.

**RESPONSE:   Defendant Brookman denies the allegations in this paragraph. Defendants Maue, Qualls, Samuel, Sadler, and Schnicker lack knowledge regarding the allegations in this paragraph.**

46.     On May 18, 2014, Plaintiff placed a phone call to Diane Bentz at about 10:30 am from the West House Yard to inform her about the aforementioned events described within this Complaint and to do whatever she could to help Plaintiff.

**RESPONSE:   Defendants lack knowledge regarding the allegations in this paragraph.**

47.     On May 24, 2014, within Cell House North One on Eight <8> Gallory [sic] Flag during a lunch line movement to the chow hall Plaintiff was passing Defendant Qualls without provoktion [sic] Qualls made threats to Plaintiff to assault Plaintiff again

and for Plaintiff to, "put your eyeballs back in your head!" where Plaintiff proceeded onward to the chow hall.

**RESPONSE:    Defendant Qualls denies the allegations in this paragraph. Defendants Maue, Schnicker, Sadler, Samuel, and Brookman lack knowledge regarding the allegations in this paragraph.**

48.    ON May 25, 2014, Plaintiff made another call at the yard at about 7:30 pm to 8 pm to see what was being done about the aforementioned events do [sic] to the fact that nothing was being done and Plaintiff was still being threatened and to contact someone again about the aforementioned events within this Complaint.

**RESPONSE:    Defendants Brookman, Maue, Qualls, Samuel, Sadler, and Schnicker lack knowledge regarding the allegations in this paragraph; however, Defendants deny they ever threatened Plaintiff.**

49.    On May 27, 2014, as a result of Plaintiff's aforementioned phone call of May 25, 2014, Plaintiff was taken to see internal affairs Defendant, Lieutenant John Doe #6 on the 7 am to 3 pm shift, where Plaintiff informed Defendant John Doe #6 of all of the aforementioned events and Defendants within this Complaint.   After Plaintiff was through talking to Defendant John Doe #6 Plaintiff was sent back to cell house N-1 <North One>.

**RESPONSE:    Defendants Brookman, Maue, Qualls, Samuel, Sadler, and Schnicker lack knowledge regarding the allegations in this paragraph.**

50.     On May 27, 2014, on the 3 pm to 11 pm shift Defendant John Doe #5 upon doing count stopped at Plaintiff's cell and made threats to Plaintiff for talking to "thoughs [sic] people," referring to internal affairs.

**RESPONSE:     Defendants Brookman, Maue, Qualls, Samuel, Sadler, and Schnicker lack knowledge regarding the allegations in this paragraph.**

51.     On May 27, 2014, Defendant's [sic] John Doe #5 and Campbell deadlocked Plaintiff and Plaintiff's cell mate so that we could not be alowed [sic] to go to chow, where when the Eight Gallory [sic] chow line came back Plaintiff and his cell mate both stopped and requested a food tray from Defendant's [sic] John Doe #5 and Campbell, where the Defendants refused to give us food trays and told Plaintiff that he <Plaintiff> should not have snitched to internal affairs and would just have to starve. Defendant's [sic] John Doe #5 and Campbell both knowingly and maliciously retaliated against Plaintiff for reporting the aforementioned events to internal affairs.

**RESPONSE:     Defendants Brookman, Maue, Qualls, Samuel, Sadler, and Schnicker lack knowledge regarding the allegations in this paragraph.**

52.     On May 29, 2014, Defendant's [sic] Brookman, Ryan Sadler, Schnicker, Maue, Menard Warden, Qualls, and Samuels [sic] were served by the United States marshals regarding this case with d/e #1, Plaintiff's first Complaint.

**RESPONSE:   Defendants admit that May 29, 2014 is when their summonses were returned to the Circuit Clerk executed.**

53.     On May 30, 2014, Plaintiff was moved from North One Cell House <N-I-835> to the North Two <N-2-330> Cell House, where N-2 Cell House is a

segregation and/or segregation like cell house that is isolated from the rest of general population with a segregation like yard and separate gym from what general population receives.   In retaliation for filing this law suit [sic] and others.

**RESPONSE:   Defendants admit that Plaintiff was moved from North One Cell House to North Two Cell House; however, Defendants deny the remaining allegations in this paragraph.**

54.    Plaintiff is currently housed within Housing Unit North Two where Plaintiff is continually being harassed by Defendant, Lindenberg for filing law suits [sic] and for suing Lindenberg, where Defendant Lindenberg continually tells Plaintiff that he <Lindenberg> wants to kick Plaintiff's ass.   <See Bentz <v> Hughs, 13-cv-01280>.

**RESPONSE:   Pursuant to the Court's July 11, 2014 Memorandum and Order, Plaintiff was denied leave to amend his complaint as to the two new retaliation claims against Lindenberg and Counselor Allsup.   (Doc. 32 at 3.)   Therefore, Defendants do not respond to the allegations in this paragraph.**

55.    While Plaintiff was being housed within above Housing Unit North One Cell 835 <N-I-835> Plaintiff talked to Defendant Counselor Allsup about the above events of the use of excessive force and handed Allsup a 2nd emergency grievance which to this day has not be [sic] responded to, where Plaintiff believes Allsup is trying to preven [sic] Plaintiff from the grievance procedure as the other Defendants have, Allsup refused to do anything.

**RESPONSE:   Pursuant to the Court's July 11, 2014 Memorandum and Order, Plaintiff was denied leave to amend his complaint as to the two new retaliation**

**claims against Lindenberg and Counselor Allsup.   (Doc. 32 at 3.)   Therefore, Defendants do not respond to the allegations in this paragraph.**

56.     Plaintiff has sent out mail over the duration that Plaintiff has been housed within N-2-835 both to family and legal mail to the U.S. District Court Northern District, Attorney General for discovery, and to Plaintiff's lawyer, where for months now Plaintiff's mail has been stopped from being mailed out by Defendants and/or other [sic] while Plaintiff has been housed within North One and/or North Two.   Denying Plaintiff access to his lawyer and the courts in a [sic] effort to prevent Plaintiff from adequately litigating Plaintiff's civil law suits [sic].

**RESPONSE:     Defendants Schnicker, Maue, Qualls, Sadler, Samuel, and Brookman lack knowledge regarding the allegations in this paragraph.**

57.     Plaintiff's aforementioned issues of excessive force and medical health care have never been addressed to this date.

**RESPONSE:   Defendants Qualls and Maue have denied that they used excessive force upon Plaintiff; therefore, there are no related medical health care issues to be addressed as a result.**

58.     The aforementioned actions of Defendants' [sic] in using excessive force against Plaintiff, has caused or proximately caused Bentz to have his first, and Eighth Amendment rights violated.

**RESPONSE:   Defendants Maue and Qualls deny using excessive force against Plaintiff.   Defendants deny violating Plaintiff's First and Eighth Amendment rights.**

59.     The above actions of Defendant's [sic] Maue, Qualls, John Doe #1, and John Doe #2 in using excessive force against Plaintiff does constitute the tort of assault and battery under the law of Illinois, 720 ILCS 5/12-1 et seq.

**RESPONSE:     Defendants Maue and Qualls deny the allegations in this paragraph.**

60.     Bent will provide evidence at trial to substantiate that in fact, specific Defendants' [sic] have been deliberately indifferent to Bent'z serious medical health needs by 1) Denial or delay of access to treatment; 2) Failure to inquire into essential facts that are necessary to make a professional judgment; and 3) interference with medical judgment by factors unrelated to Plaintiff's serious medical needs.

**RESPONSE:   Defendants deny the allegations in this paragraph.**

61.     Upon information and belief Plaintiff believes his symptoms evidenced that he substained [sic] a fractured jaw and posible [sic] concussion.

**RESPONSE:   As Defendants Qualls and Maue have asserted that they did not use excessive force upon Plaintiff, Plaintiff could not have suffered a fractured jaw or possible concussion as a result of such an assault.   Therefore, Defendants deny the allegations in this paragraph.**

62.     Upon information and belief Bentz should have been afforded an x-ray of his jaw area and/or M.R.I. to determine the severity of Plaintiff's injuries.

**RESPONSE:   As Defendants Qualls and Maue have asserted that they did not use excessive force upon Plaintiff, Plaintiff could not have suffered any injuries**

as a result of such an assault.   Therefore, Defendants deny the allegations in this paragraph.

63.    Upon information and belief Bentz should have been afforded pain medication for his known chronic pain and obvious swollen jaw and neck area.

**RESPONSE:   As Defendants Qualls and Maue have asserted that they did not use excessive force upon Plaintiff, Plaintiff could not have suffered any injuries or pain as a result of such an assault.   Therefore, Defendants deny the allegations in this paragraph.**

64.    Upon information and belief Bentz should have been refered [sic] to internal affairs for further investigation to the threats to kill Bentz and the excessive use of force by Defendants as above mentioned for the safty [sic] and security of Plaintiff and Plaintiff's life.

**RESPONSE:   Defendants deny that Plaintiff ever requested from them to be taken to or to speak to Internal Affairs.**

65.    Bentz alleges that Defendants' [sic] aforementioned denial or delay of access to reasonably adequate medical treatment was intentionally knowing and malicious, and caused and may continue to cause Bentz substantial and ongoing harm where his pain and suffering were and are still being unnecessarily prolonged and where that denial or delay of access to reasonably adequate medical treatment has caused Bentz a real risk of permanant [sic] injury to his jaw and/or jaw area.

**RESPONSE:   Defendants deny the allegations in this paragraph.**

66.     Plaintiff alleges that the Defendants' [sic] aforementioned denial of access to medical personnel qualified to exercise a reasonable informed judgment about Bentz's injuries and chronic pain to his jaw and neck and head area denied Bentz access to reasonably adequate medical services, was intentional, knowing, and malicious, and caused and may continue to cause Bentz substantial and ongoing harm where his injuries and chronic pain to his jaw, neck, and head area are at risk.

**RESPONSE:   Defendants deny the allegations in this paragraph.**

67.     Plaintiff too alleges that the Defendant Jane Doe Nurse's aforementioned failure to inquire into the essential facts that were necessary to make a sound professional judgment about Plaintiff's symptomatic need for x-rays and an [sic] M.R.I. did deny Bentz access to reasonably adequate medical services, was intentional, knowing , and malicious, and caused and may continue to cause Bentz substantial and ongoing harm where his injury and reason for chronic pain were consequentially not able to be fully evaluated to evaluate treatment needs.   Defendant, Jane Doe Nurse's examination was at best cursory and prefunctory, [sic] she prescribed no adequate pain medication for Bentz's chronic pain, and she failed to order an x-ray, M.R.I. and/or refer Bentz to a doctor who is qualified to make a sound professional judgment about plaintiff's medical needs.

**RESPONSE:   Defendants lack knowledge regarding the alleged conduct of Jane Doe Nurse.**

68.     Plaintiff does also allege that as a result of the above actions or inactions of the Defendants' [sic] individually or collectively, he sustained mental pain and injury

in the form of chronic depression from not being able to receive adequate medical care and adequate safty [sic] for his life and the threats of being further assaulted by Defendants' [sic] do [sic] to the refusal of Defendants [sic] aforementioned to adequately take safty [sic] measures to protect Bentz.

**RESPONSE:**   **Defendants deny the allegations in this paragraph.**

69.   The aforementioned denial or delay of access to reasonably adequate medical treatment and subsequent injuries constitutes deliberate indifference by Defendants to Plaintiff's serious medical needs in violation of the Eighth Amendment, constitutes a violation of the First Amendment right to freedom of expression and communication, and constitutes the tort of negligence under the law of Illinois

**RESPONSE:**   **Defendants deny the allegations in this paragraph.**

70.   The aforementioned denial of access to medical personnel qualified to exercise a reasonable [sic] informed judgment about Bentz's symptomatic injuries, chronic pain, and consequential subsequent injuries, constitutes deliberate indifference by Defendants to Plaintiff's serious medical needs in violation of the Eighth Amendment, constitutes a violation of the First Amendment right to freedom of expression and communication, and constitutes the tort of negligence under the law of Illinois.

**RESPONSE:**   **Defendants deny the allegations in this paragraph.**

71.   The aforementioned failure of Defendant's [sic] to inquire into essential facts that were necessary to make a sound professional judgment about Bentz's symptomatic need for a x-ray, an [sic] M.R.I., and pain medication, and consequential

injuries, constitutes deliberate indifference by Defendants' [sic] to Plaintiff's serious medical needs in violation of the Eighth Amendment, and constitutes the tort of negligence under the law of Illinois.

**RESPONSE:   Defendants deny the allegations in this paragraph.**

72.     On May 13, 2014, Plaitniff mailed a letter to the Illinois Department of Corrections Administrative Review Board/Inmate Issues to document the excessive use of force by Defendants and inadequate medical health care related to his posibly [sic] fractured jaw, swollen jaw, and swollen neck and head.  The Administrative Review Board and/or Inmate Issues did/have not addressed Plaitniff's issues and/or responded back to Plaintiff, where upon information and belief all of Plaintiff's outgoing mail is not being mailed out and plased [sic] within the trash along with Plaintiff's other aforementioned requests.

**RESPONSE:     Defendants lack knowledge about the allegations in this paragraph; however, Defendants Qualls and Maue dney they used excessive force on Plaintiff and all Defendants deny that they were deliberately indifferent to Plaintiff's serious medical need.**

73.     Upon information and belief, as a result of the above Defendants' actions or inactions, individually or in combination, Bentz is at risk for his health and safty [sic].

**RESPONSE:   Defendants deny the allegations in this paragraph.**

74.     The Defendants' [sic], individually or collectively, acted with deliberate indifference to Plaintiff's serious medical health needs when they knew Bentz's jaw and neck areas were swollen and that he was in severe pain, but failed to provide Bentz

with adequate medication and other necessary reasonable adequate medical care for reasons not penelogically justified.

**REPSPONSE:   Defendants deny the allegations in this paragraph.**

75.   The First Amendment protects a prisoner's right to, inter alia, the freedom of expression and communication.

**RESPONSE:   Defendants deny the allegations in this paragraph.**

76.   The Eighth Amendment, which forbids "cruel and unusual punishment" governs the treatment of convicted prisoners.   Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.

**RESPONSE:   Defendants deny that Plaintiff's completely and accurately characterizes the Eighth Amendment's prohibition against "cruel and unusual punishment" as it is applied to the treatment of incarcerated individuals.**

77.   As a convicted-sentenced prisoner, the constitution requires prison authorities to provide prisoners with reasonable [sic] adequate medical care.   That is, medical services at level reasonably commensurate with modern medical science and of a quality acceptable with prudent professional standards.

**RESPONSE:   Defendants deny that Plaintiff accurately and completely characterizes the constitutional requirements that prison officials have with respect to providing inmates with medical care.**

78.     The persons named in this action absolutely do not have impunity when they infringe the constitutional authority that penelogically justifies sound decision making in the daily operations of prison.

**RESPONSE:       Defendants deny violating Plaintiff's constitutional rights whatsoever.**

## JURY DEMAND

Defendant demands a trial by jury in this matter.

## RELIEF REQUESTED

Defendant denies that Plaintiffs are entitled to any relief whatsoever.

## AFFIRMATIVE DEFENSES

1.      At all times relevant herein, Defendants acted in good faith in the performance of their official duties and without violating Plaintiffs' clearly established statutory or constitutional rights of which a reasonable person would have known. Defendants are therefore protected from suit by the doctrine of qualified immunity.

2.      To the extent that the Plaintiff has sued the Defendants in their official capacity, Plaintiffs' claims for monetary damages are barred by the Eleventh Amendment.

3.      To the extent that the Plaintiffs seek injunctive relief for non-ongoing violations, it is barred by sovereign immunity and the Eleventh Amendment.

4.      To the extent that Plaintiff has failed to exhaust his administrative remedies prior to the initiation of this cause of action, Plaintiff's claims are barred by the Prisoner Litigation Reform Act (42 U.S.C. § 1997).

5.      With respect to Plaintiff's state law negligence claim against Defendants, Plaintiff's claim is barred by sovereign immunity and the Eleventh Amendment.

6.      Illinois law is well settled that state officials and employees are fully protected from liability for acts falling within their official discretion.   *Larson v. Darnell*, 113 Ill.App.3d 975 976 (1983).   This common law doctrine is known as public official immunity.   *Mora v. State*, 68 Ill.2d 223, 234 (1977).

WHEREFORE, for the above and foregoing reasons, Defendants respectfully requests this honorable Court deny Plaintiffs' requested relief.

                                        Respectfully submitted,

                                        KENT BROOKMAN, NATHANIEL MAUE,
                                        WILLIAM QUALLS, RYAN SADLER,
                                        MICHAEL SAMUEL, and MICHAEL
                                        SCHNICKER,

                                          Defendants,

                                        LISA MADIGAN, Attorney General,
                                        State of Illinois,

Joanne Scher, #6300778
Assistant Attorney General
500 South Second Street                   Attorney for Defendants,
Springfield, Illinois   62706
(217) 557-7081   Phone          By:___/s/ Joanne Scher_____
(217) 524-5091   Fax                    JOANNE SCHER
Email: jscher@atg.state.il.us           Assistant Attorney General

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

DAVID ROBERT BENTZ, #S03210,       )
                                   )
              Plaintiff,           )
                                   )
        vs.                        )         No. 14-562-MJR-SCW
                                   )
SGT. QUALLES, et al.,              )
                                   )
              Defendants.          )

## CERTIFICATE OF SERVICE

I hereby certify that on July 25, 2014, the foregoing document, *Defendants' Answer and Affirmative Defenses to Plaintiff's Amended Complaint*, was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

        None

and I hereby certify that on the same date, a copy of the foregoing document was mailed by United States Postal Service, to the following non-registered participant:

        David Robert Bentz, #S03210
        Menard Correctional Center
        Post Office Box 1000
        Menard, Illinois   62259

                                    Respectfully submitted,

                                     /s/Joanne Scher
                                    Joanne Scher, #6300778
                                    Assistant Attorney General
                                    Attorney for Defendants
                                    Office of the Attorney General
                                    500 South Second Street
                                    Springfield, Illinois   62706
                                    (217) 557-7081   Phone
                                    (217) 524-5091   Fax
                                    Email:   jscher@atg.state.il.us