IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DAVID ROBERT BENTZ,

      Plaintiff,

vs.

KENT BROOKMAN, KIMBERLY
BUTLER, NATHANIEL MAUE,
WILLIAM QUALLS, RYAN SADLER,
MICHAEL SAMUEL, MICHAEL
SCHNICKER, LT. ALLEN, T. MONROE,
MR. MONROE, and UNKNOWN
PARTIES

      Defendants.

) 
) Case No.   14-cv-562-MJR-SCW
)
)
)
)
)
)
)

## REPORT AND RECOMMENDATION

**WILLIAMS, Magistrate Judge:**

### I. Introduction

This case is before the Court on Plaintiff's Motion for Preliminary Injunction (Doc. 31). The matter has been referred to United States Magistrate Judge Stephen C. Williams by United States District Judge Michael J. Reagan pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (c), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a). It is **RECOMMENDED** that the District Court **ADOPT** the following findings of fact and conclusions of law, and **DENY AS MOOT** Plaintiff's motion for preliminary injunction (Doc. 31).

### II. Findings of Fact

Plaintiff filed his Complaint on May 16, 2014 alleging that various Defendants assaulted him on May 11, 2014. Plaintiff alleges that Defendant Maue assaulted him in retaliation for Plaintiff filing several lawsuits against various other prison officials and that Qualls also assaulted Plaintiff while Defendants Samuel, Brookman, Sadler, Schnicker, T. Monroe, Allen, and Mr. Monroe

failed to protect Plaintiff from the assault. Specifically, Plaintiff alleges that Maue, Qualls, and unknown Defendants grabbed Plaintiff and punched him and threw him into a wall face first (Doc. 33 at p. 4). Defendants then placed Plaintiff in a shower (*Id.*). Plaintiff alleges that after the assault, the Defendants failed to provide him with medical care and that an unknown nurse failed to provide him with medical care (Doc. 5 at p. 2).

As part of Plaintiff's initial Complaint, Plaintiff sought preliminary injunctive relief, asking that the Court order IDOC to: (1) immediately treat his suspected broken jaw and neck injury; and (2) immediately attend a hearing addressing his safety concerns stemming from his May 2014 assault (Doc. 5 at p. 7). Plaintiff stated he needed medical attention because as a result of the assault by Defendants, Plaintiff allegedly suffered from a broken jaw and swollen neck. The matter was referred to the undersigned for an evidentiary hearing solely on Plaintiff's request for medical treatment for his suspected broken jaw and neck injury. District Judge Reagan denied Plaintiff's other injunctive request for a hearing to address his safety concerns as Plaintiff had since been moved to another cell house and is not in contact with Defendants.

Prior to the evidentiary hearing, Defendants filed a Response (Doc. 43) to Plaintiff's motion. Defendants noted that there was no record of Plaintiff requesting a sick call pass since May 1, 2014 (Doc. 43-1 at p. 2 ¶ 17). Further, Defendants noted that Plaintiff saw the dentist on May 22, 2014 to have a tooth filled and there was no documentation in the dental records regarding Plaintiff's injuries to his jaw (*Id.* at p. 1 ¶¶ 6 & 8). He also refused lab work on June 20, 2014 (*Id.* at p. 1 ¶ 9). Although Plaintiff stated in his Complaint that he saw a nurse on May 11, 2014 shortly after the alleged assault, there is no indication of this visit in the medical records (Doc. 43-1 at pp. 3-8). Plaintiff filed a Reply brief, but it did not discuss his visit with the dentist nor did he document his sick call pass requests (Doc. 44).

On August 26, 2014, the undersigned held an evidentiary on the portion of Plaintiff's motion which requested medical care for his neck and jaw. At the hearing, Plaintiff testified that he saw a nurse on Sunday, August 24, 2014 who gave him Ibuprofen and Tylenol for his neck pain. He was not aware if the nurse referred him to the doctor at that time. Plaintiff indicates that he still has neck and jaw pain from the May 11, 2014 assault and that his neck and jaw is swollen and he has a lump on his left shoulder which experiences intermittent sharp pain. Plaintiff also indicated that he had weakness on the left side of his face and neck.

Defense counsel submitted Plaintiff's current medical records which indicate that on August 22, 2014, Plaintiff was scheduled to be seen by a nurse on the next nurse sick call rounds for pain in his jaw and neck (Doc. 53-1 at p. 1). The records from August 23, 2014, indicate that Plaintiff was seen by the nurse and at the time he complained of pain in his left neck and jaw as a result of an assault on May 11, 2014 during line chow movement (*Id.* at p. 2). Plaintiff complained to the nurse that his pain increases with talking and chewing and that he has weakness on the left side (*Id.*). The nurse noted no bruising, redness, or tenderness, but did note swelling (*Id.*). The record indicates that Plaintiff was prescribed Acetaminophen and Ibuprofen and referred to the MD (*Id.*).

As to Plaintiff's request for medical care in May 2014, Plaintiff indicated that he originally saw a nurse on the evening of May 11, 2014, but that she did not do anything for his injuries. There is no indication in the medical records that such a visit occurred (Doc. 43-1 at pp. 3-8). He testified that he then put in a sick call slip to the Nurse Sick Call Box a few days after the May 11, 2014 assault. He also testified that he put in another sick call slip a week after the first sick call slip. He did not put in any more sick call slips as by that time he had filed his Complaint and the District Judge had referred the matter for hearing, so Plaintiff decided to wait for the Court's ruling rather than continue to request medical care. Plaintiff acknowledged that he saw a dentist on May 22, 2014 to get a tooth

filled, but he did not inform the dentist of his injuries because he believed that the dentist would just tell him to put in a sick call pass. He explained that in the past when he had complained to medical about unrelated issues on a sick call pass, they had refused to review his unrelated issues. Plaintiff testified that he did have swelling and pain on May 22, 2014 but he did not tell the dentist.

### III. Conclusions of Law

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). *Accord Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right"). To win a preliminary injunction, a plaintiff must show (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm without the injunction, (3) that the harm he would suffer is greater than the harm a preliminary injunction would inflict on defendants, and (4) that the injunction is in the public interest. *Judge v. Quinn*, 612 F.3d 537, 546 (7th Cir. 2010) (citing *Winter*, 555 U.S. at 20). The "considerations are interdependent: the greater the likelihood of success on the merits, the less net harm the injunction must prevent in order for preliminary relief to be warranted." *Judge*, 612 F.3d at 546.

In the context of prisoner litigation, there are further restrictions on courts' remedial power. The scope of the court's authority to enter an injunction in the corrections context is circumscribed by the Prison Litigation Reform Act (PLRA). *Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012). Under the PLRA, preliminary injunction relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. §3626(a)(2). *See also Westefer*, 682 F.3d at 683 (the PLRA "enforces a point repeatedly made by the Supreme Court in cases

**challenging prison conditions: prison officials have broad administrative and discretionary authority over the institutions they manage") (internal quotation marks and citation omitted).**

The Seventh Circuit has described injunctions like the one sought here, where an injunction would require an affirmative act by the defendant, as a mandatory preliminary injunction. *Graham v. Med. Mut. of Ohio*, **130 F.3d 293, 295 (7th Cir. 1997).** Mandatory injunctions are "cautiously viewed and sparingly issued," since they require the court to command a defendant to take a particular action. *Id.* **(citing** *Jordan v. Wolke*, **593 F.2d 772, 774 (7th Cir. 1978)).** *See also* *W.A. Mack, Inc. v. Gen. Motors Corp.*, **260 F.2d 886, 890 (7th Cir. 1958) ("A preliminary injunction does not issue which gives to a plaintiff the actual advantage which would be obtained in a final decree.").**

Here, the undersigned was presented with many contradictory facts at the hearing. There were disputes over whether Plaintiff saw a nurse on the evening of May 11, 2014. Plaintiff testified that he did see a nurse but there is no documentation in the medical records of such a visit. Plaintiff also testified that he put in sick call request slips on two occasions in May 2011, but Angela Crain's affidavit indicated that no request slips were received from Plaintiff (Doc. 43-1 at p. 2 ¶ 17). There were also issues with Plaintiff's testimony regarding his visit with the dentist on May 22, 2014 as Plaintiff testified that he was experiencing pain and swelling in his jaw on that date, but he did not voice his complaints to the dentist. Nor did he seek medical treatment beyond his original two sick call request slips because he believed the Court would resolve his issues with the health care unit.

The undersigned, however, need not resolve these issues of fact as the parties do not dispute that Plaintiff has since been seen by a nurse for his injuries. Plaintiff testified, and the medical records support his testimony, that Plaintiff was seen by a nurse for his injuries on August 23,

2014. At the time, Plaintiff informed the nurse of the location of his pain in his left jaw and neck and described the pain to the nurse. The nurse noted swelling, provided Plaintiff with Acetaminophen and Ibuprofen, and referred him to the medical doctor. Plaintiff acknowledged that he was referred to a medical doctor, according to the medical records. As Plaintiff is currently receiving treatment for his injuries and both parties agree that Plaintiff has currently been referred to the medical doctor for further care, the undersigned finds that Plaintiff has obtained the relief he requested in his motion. Thus, the undersigned **RECOMMENDS** that Plaintiff's motion for preliminary injunction regarding medical care be **DENIED AS MOOT** as Plaintiff is currently receiving medical care for his injuries.

### IV. Conclusion

Accordingly, the undersigned **RECOMMENDS** that the Court **DENY AS MOOT** Plaintiff's motion for preliminary injunction (Doc. 31) as he is currently receiving medical treatment.

Pursuant to **28 U.S.C. § 636(b)(1)** and **Local Rule 73.1(b),** the parties may object to any or all of the proposed dispositive findings in this Recommendation. The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *See, e.g., Snyder v. Nolen*, **380 F.3d 279, 284 (7th Cir. 2004).** Accordingly, Objections to this Report and Recommendation must be filed on or before **September 12, 2014**.

**IT IS SO ORDERED**.
DATED: August 26, 2014.

*/s/ Stephen C. Williams*
STEPHEN C. WILLIAMS
United States Magistrate Judge