IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DAVID ROBERT BENTZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   Case No.   14-cv-0562-MJR-SCW |
| | ) |
| WILLIAM QUALLS, | ) |
| MICHAEL SAMUEL, | ) |
| KENT BROOKMAN, | ) |
| NATHANIEL MAUE, | ) |
| MICHAEL SCHNICKER, | ) |
| RYAN SADDLER, | ) |
| KIMBERLY BUTLER, | ) |
| RAYMOND ALLEN, | ) |
| TINA MONROE, | ) |
| WESLEY MONROE, | ) |
| UNKNOWN NURSE DEFENDANT, | ) |
| and UNKNOWN JOHN DOE | ) |
| CORRECTIONAL OFFICERS 1-4, | ) |
| | ) |
| Defendants. | |

MEMORANDUM AND ORDER

REAGAN, Chief Judge:

A.   INTRODUCTION

On May 16, 2014, David Robert Bentz (Plaintiff), incarcerated at Menard Correctional Center, filed a pro se complaint in this Court under 42 U.S.C. 1983, asserting that several correctional officers had violated his federally secured constitutional rights. Plaintiff alleges that he was assaulted on May 11, 2014 by Defendants Maue, Qualls, and Unknown Defendants #1 and 2, and various other Defendants failed to protect him or were deliberately indifferent to the serious medical needs he received as a result of the assault.   The case survived threshold review under 28 U.S.C. 1915A on May 21, 2014,

and summonses were issued as to seven named Defendants.   An amended complaint was filed on July 14, 2014, and requests for waiver of service were sent as to three additional Defendants identified therein.

Now before the Court is a motion for summary (and supporting memorandum) filed by the ten named Defendants -- Raymond Allen, Kent Brookman, Kimberly Butler, Nathaniel Maue, William Qualls, Ryan Sadler, Michael Samuel, Michael Schnicker, Tina Monroe, and Wesley Monroe (Docs. 76 and 77).   Plaintiff filed a response (Doc. 80) opposing the motion.   Defendants filed a reply (Doc. 81).   Based on the following, the Court **GRANTS** Defendants' motion for summary judgment (Doc. 76).

B.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges that several prison officials assaulted him on May 11, 2014.   More specifically, as limited by the Court's threshold review Order (Doc. 5), Plaintiff alleges the following.   On May 11, 2014, Defendant Maue passed Plaintiff while Plaintiff was on his way to lunch and threatened to slap Plaintiff the next time Plaintiff passed him (Doc. 5, p. 2).   When Plaintiff returned from lunch, Maue approached him and pretended to slap him.   Maue and Qualls then ordered Plaintiff to report to Six Gallery. When Plaintiff arrived, Defendants Maue, Qualls, and unknown Defendants #1 and #2 assaulted Plaintiff by punching him, grabbing his neck and shoving him into a wall (*Id*.). Defendants Samuel, Brookman, Sadler, Qualls, Schnicker, Maue, Tina Monroe, Wesley Monroe, and unknown Defendants #2, #3, and #4 failed to intervene.   Maue grabbed Plaintiff by his shirt and twisted it till Plaintiff could not breathe, dragging Plaintiff from

Six Gallery to Five Gallery.   Maue then slammed Plaintiff's head into the wall indicating that he would kill Plaintiff (*Id.*).   Schnicker and Qualls also participated in the assault, while the other Defendants watched.   Plaintiff passed out; when he woke up, the Defendants continued to assault him (*Id.*).

Plaintiff further alleges the following.   After the assault, Plaintiff was returned to his cell.   He asked Defendant Sadler and other unknown Defendants for help but they failed to help him, instead threatening to beat him if he reported the assault (Doc. 5, p. 2). That afternoon, Plaintiff reported the assault to Defendant Samuels in the prison yard; Samuels did not help him (*Id.* at p. 3).   Instead, Samuels threatened Plaintiff with a disciplinary ticket if he did not return to his cell (*Id.*).   Later, Plaintiff spoke with an unknown Lieutenant and complained of jaw and neck pain.   The Lieutenant agreed to help Plaintiff, if he did not make a case about the incident.   Plaintiff was escorted to an unknown Defendant nurse who refused Plaintiff's request for pain medication, x-rays, and other tests.

Defendants Raymond Allen, Kent Brookman, Kimberly Butler, Nathaniel Maue, William Qualls, Ryan Sadler, Michael Samuel, Michael Schnicker, Tina Monroe, and Wesley Monroe filed a motion for summary judgment in response to Plaintiff's complaint.   Defendants argue that they are entitled to summary judgment/dismissal, because Plaintiff failed to exhaust his administrative remedies prior to filing this suit. Defendants point out that only one grievance filed by Plaintiff related to the allegations in this complaint was submitted at the institutional level.   That grievance was dated

May 16, 2014 and was received on May 21, 2014 (Doc. 77-3, p. 1; Doc. 77-2, p. 2).   The warden deemed it a non-emergency on May 22, 2014 (*Id.*).   Plaintiff filed his original complaint in this Court on May 16, 2014 (Doc. 1).

Plaintiff counters that he wrote an emergency grievance and submitted it on May 12, 2014 and never received a response (Doc. 80-1, p. 55).   He states that he submitted the grievance again on May 19, 2014 (Doc. 80-1, pp. 111-112).   Plaintiff maintains that although the logs state the grievance was returned to him, he never received a response.

C.   APPLICABLE LEGAL STANDARDS

→   *Summary Judgment Standard*

Summary judgment is proper only "if the admissible evidence considered as a whole shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." ***Dynegy Mktg. & Trade v. Multi Corp.*, 648 F.3d 506, 517 (7th Cir. 2011) (internal quotation marks omitted),** *citing* **FED. R. CIV. P. 56(a).** ***See also Ruffin-Thompkins v. Experian Info. Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005).**

The party seeking summary judgment bears the initial burden of demonstrating—based on the pleadings, affidavits, and/or information obtained via discovery—the lack of any genuine issue of material fact. ***Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).** After a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine

issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56(e)(2)).

A fact is material if it is outcome determinative under applicable law. *Anderson*, 477 U.S. at 248; *Ballance v. City of Springfield, Ill. Police Dep't*, 424 F.3d 614, 616 (7th Cir. 2005); *Hottenroth v. Village of Slinger*, 388 F.3d 1015, 1027 (7th Cir. 2004). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. To survive summary judgment, the nonmovant must present more than a "mere scintilla" of evidence showing the existence of a genuine issue of material fact. *Chaib v. Indiana*, 744 F.3d 974, 981 (7th Cir.), *cert. denied*, 135 S. Ct. 159 (2014). *See also Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644, 650 (7th Cir. 2014). Stated another way, a scintilla of evidence supporting the nonmovant's position is not enough; "there must be evidence on which the jury could reasonably find for the non-moving party." *Harris N.A. v. Hershey*, 711 F.3d 794, 798 (7th Cir. 2013).

On summary judgment, the Court considers the facts in the light most favorable to the non-movant (here, Plaintiff). *Srail v. Village of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009). The Court adopts reasonable inferences, and resolves doubts, in the nonmovant's favor. *Id.*; *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). Summary judgment is "not an appropriate occasion for weighing the evidence" and should not be granted if the evidence before the court supports alternate inferences. *Dowden v. Polymer Raymond, Inc.*, 966 F.2d 1206,

1207-08 (7ᵗʰ Cir. 1992).   *See also Anderer v. Jones*, **385 F.3d 1043, 1064 (7th Cir. 2004),**

*cert. denied,* **546 U.S. 1032 (2005).**

→   *Exhaustion Under the PLRA*

Lawsuits brought by prisoners are governed by the Prison Litigation Reform Act

(PLRA), 42 U.S.C 1997e.   The PLRA requires that "no action shall be brought with

respect to prison conditions under section 1983 of this title, or any other Federal law, by a

prisoner confined in any jail, prison, or other correctional facility until … administrative

remedies as are available are exhausted." **42 U.S.C. 1997e(a).**

Exhaustion is a condition precedent to suit in federal court, so the inmate must

exhaust before he commences his federal litigation; he cannot exhaust *while* his lawsuit is

pending.   *See Perez v. Wisconsin Department of Corr.,* **182 F.3d 532, 535 (7ᵗʰ Cir. 1999);**

*Dixon v. Page*, **291 F.3d 485, 488 (7ᵗʰ Cir. 2002).**   If the inmate fails to exhaust before

filing suit in federal court, the district court must dismiss the suit.   *See Jones v. Bock,*

**549 U.S. 199, 223 (2007); *Burrell v. Powers*, 431 F.3d 282, 284-85 (7ᵗʰ Cir. 2005).**[1]

The United States Court of Appeals for the Seventh Circuit requires strict

adherence to the PLRA's exhaustion requirement.   *Dole v. Chandler,* **438 F.3d 804, 809**

**(7th Cir. 2006) ("This circuit has taken a strict compliance approach to exhaustion").**

The exhaustion requirement of the PLRA is dependent upon the procedures established

---

[1]   Although *dismissal* is the procedural step the district court takes if a plaintiff failed to exhaust prior to filing suit, the issue of exhaustion most often is raised via summary judgment motion, so that the Court can consider evidence "outside the pleadings," such as affidavits, grievances, responses, appeals, and related documentation.   *See* FED. R. CIV. P. **12(d).**

by the state in which the prison is located. *Jones*, **549 U.S. at 218.** Unexhausted claims may not be brought to court.   *Jones*, **549 U.S. at 211,** *citing Porter v. Nussell*, **534 U.S. 516, 524 (2002).**

The Seventh Circuit requires strict compliance as to exhaustion. "Unless a prisoner completes the administrative process by following rules the state has established for that process, exhaustion has not occurred." *Pozo v. McCaughtry*, **286 F.3d 1022, 1025 (7th Cir. 2002).**   This includes the filing of "complaints and appeals in the place, and at the time, the prison's rules require." *Id*. **at 1025.**   If the prisoner fails to comply with the established procedures, including time restraints, the court may not consider the claims.   *Pavey v. Conley*, **663 F.3d 899, 903 (7th Cir. 2011).**

The purpose of the exhaustion requirement is two-fold.   First, it gives the prison officials the chance to address the prisoner's claims internally, before any litigation becomes necessary. *Kaba v. Stepp*, **458 F.3d 678, 684 (7th Cir. 2006);** *Woodford v. Ngo*, **548 U.S. 81, 89-90 (2006).** Second, it "seeks to reduce the quantity and improve the quality of prisoner suits." *Porter*, **534 U.S. at 524.**   *See also Booth v. Churner*, **532 U.S. 731, 737 (2001) ( PLRA's requirement will help "filter out some frivolous claims.").**

Because exhaustion is a prerequisite to filing a suit, a prisoner must wait to commence litigation until he has completed the established process; he may not file in anticipation of administrative remedies soon being exhausted. *Perez*, **182 F.3d at 535,** *citing* **42 U.S.C 1997e(a);** *Ford v. Johnson*, **362 F.3d 395, 398 (7th Cir. 2004).**   A suit filed

prior to exhaustion of available remedies will be dismissed, even if the remedies become exhausted *while* the suit is pending. **Perez, 182 F.3d at 535.**

The exhaustion requirement is an affirmative defense, on which defendants bear the burden of proof. **Pavey, 663 F.3d at 903.** The Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. **Pavey v. Conley, 544 F.3d 739, 740-41 (7th Cir. 2008).** Where failure to exhaust administrative remedies has been raised as an affirmative defense (i.e., exhaustion is contested, as it is in the case at bar), the district court should follow this recommended sequence (**id., 544 F.3d at 742**):

> (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate.

> (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over.

> (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

→ *Exhaustion under Illinois Law*

As an inmate confined within the Illinois Department of Corrections (IDOC), Plaintiff was required to follow the regulations contained in the IDOC's Grievance Procedures for Offenders to properly exhaust his claims. **20 Ill. Admin. Code 504.800,** ***et seq.*** The grievance procedures first require inmates to speak with the counselor about their complaint. **20 Ill. Admin. Code 504.810(a).** Then, if the counselor does not resolve the issue, the inmate must file a grievance form directed to the Grievance Officer within 60 days of the incident. ***Id.*** The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is subject of or who is otherwise involved in the complaint. The provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

**20 Ill. Admin. Code 504.810(b).**

"The Grievance Officer shall [then] consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer...[who]shall advise the offender of the decision in writing within 2 months after receipt of the written grievance, where reasonably feasible under the circumstances." **20 Ill. Admin. Code 504.830(d).** If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the Administrative Review Board (ARB).

More specifically: "If after receiving the response of the Chief Administrative Officer, the offender still feels that the problem, complaint or grievance has not been

resolved to his or her satisfaction, he or she may appeal in writing to the Director within 30 days after the date of the decision.   Copies of the Grievance Officer's report and the Chief Administrative Officer's decision should be attached."   **20 Ill. Admin. Code 504.850(a).**

"The Administrative Review Board shall submit to the Director a written report of its findings and recommendations."   **20 Ill. Admin. Code 504.850(e).**   "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances.   The offender shall be sent a copy of the Director's decision."   **20 Ill. Admin. Code 504.850(f).**

The grievance procedures also allow for an inmate to file an emergency grievance. To file an emergency grievance, the inmate must forward the grievance directly to the Chief Administrative Officer (CAO) who may determine that "there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis.   **20 Ill. Admin. Code 504.840(a).**

If an inmate forwards the grievance to the CAO as an emergency grievance, the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him which course he has decided is necessary after reading the grievance.   **20 Ill. Admin. Code 504.840(b).**   Once the CAO has informed the inmate of his decision, the inmate may then appeal that decision to the ARB on an expedited basis.   **20 Ill. Admin.**

Code 504.850(g).

D.   <u>ANALYSIS</u>

Plaintiff alleges that he submitted his grievance on May 12, 2014 and that although it was received by the warden as an emergency, it was never returned to him. The problem is that the record plainly reveals that Plaintiff did not wait to see if his grievance was returned to him before he filed this suit.   Moreover, Plaintiff clearly was still in the process of attempting to exhaust his administrative remedies as of May 19, 2014, because he says he resubmitted his grievance at that time.

As noted above, exhaustion is a *precondition* to filing suit; a prisoner may not file suit in anticipation that his administrative remedies will soon become exhausted.   ***Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004).**   And an inmate plaintiff cannot exhaust while his lawsuit is pending.   ***Perez*, 182 F.3d at 535; *Dixon*, 291 F.3d at 488.**

Here, Plaintiff did not give the correctional facility an opportunity to review and respond to his emergency grievance.   Plaintiff's grievance was listed as being received by the warden on May 21, 2014 (Doc. 77-2, p. 2).   Plaintiff attests in his affidavit that he submitted the grievance on May 12, 2014 (Doc. 80-1, pp. 55, 111-112).   He filed his suit in this court *just four days later*, without waiting to see if the grievance was returned to him. Indeed, he filed his May 16, 2014 complaint before the warden even received the emergency grievance.   Plaintiff re-filed his grievance on May 19, 2014.   Because Plaintiff did not wait until he received the grievance back from the warden, the Court finds that Plaintiff failed to exhaust his administrative remedies prior to filing suit.

The Court does note that Plaintiff claims that he never received his grievance back from the warden.   The records before the Court indicate that the grievance was returned on May 22, 2014 (Doc. 77-2, p. 2; Doc. 77-3, p. 1).   While this dispute creates an issue of fact, it is one that does not need to be resolved in this case.   It is clear that Plaintiff did not give the prison an opportunity to review and return the grievance. Instead he filed suit on May 16, 2014, prior to the warden even having received the grievance from Plaintiff.   Thus, Plaintiff did not exhaust his grievance *prior* to filing.   If Plaintiff re-filed suit, there would be an issue of fact as to whether Plaintiff properly exhausted, as Plaintiff would have waited for a timely response before filing his complaint.   However, here the Court finds that Plaintiff filed simply his complaint too early.

Plaintiff makes much of the fact that he had exhausted by the time he filed his *amended* complaint on July 14, 2014 (Doc. 33), as by that date sufficient time had elapsed from his submitting his grievance to deem that the warden had failed to respond. Although new claims in an amended complaint do not have to be exhausted prior to filing suit (only exhausted prior to filing the new complaint), Plaintiff did not present new claims in the amended complaint.   *See Barnes v. Bailey*, **420 F.3d 673, 678 (7th Cir. 2005).**   His amended complaint merely identified several John Doe defendants. Plaintiff's amended complaint did not raise any new, properly-exhausted claims.   The amended complaint restated claims that had not been exhausted prior to filing suit. ***Barnes*, 420 F.3d at 678 (when plaintiff's complaint was the "functional equivalent of**

filing a new" suit with new claims against new individuals, then plaintiff need only exhaust before filing that complaint).  *See also Antonelli v. Sherrow*, 246 Fed. Appx. 381, 385 (7th Cir. 2007)(Plaintiff had not properly exhausted prior to filing suit when his amended complaint merely added the same claim, which was not exhausted prior to filing the original suit, against another individual).   Plaintiff cannot file a complaint and then exhaust his administrative remedies *while* the litigation is pending, which is what he tried to do here.  *Ford*, 362 F.3d at 398 (Suit filed too early must be dismissed even if plaintiff exhausted his administrative remedies *while* the case was pending.).

Accordingly, the Court **GRANTS** Defendants' motion for summary judgment and **DISMISSES without prejudice** the claims against Defendants Raymond Allen, Kent Brookman, Kimberly Butler, Nathaniel Maue, William Qualls, Ryan Sadler, Michael Samuel, Michael Schnicker, Tina Monroe, and Wesley Monroe.   To the extent that Defendant Kimberly Butler was in the case for purposes of identifying John Doe Defendants, she will remain in the case as a Defendant to help identify the unknown Defendants (John Does # 1, 2, 3, and 4 and unknown Defendant Nurse).

**Plaintiff's claims remain against unknown Defendant Nurse and John Doe Defendants #1, #2, #3, and# 4.** These five Defendants still have not been identified by Plaintiff.   Plaintiff had 90 days from October 27, 2014 to amend his complaint to identify these individuals.   He failed to do so.   The Court now **DIRECTS** Plaintiff to identify these unknown Defendants (John Doe Defendants 1 through 4 and unknown Defendant Nurse) no later than September 25, 2015.   The Court **WARNS PLAINTIFF** that failure

to do so will result in a dismissal of all remaining unknown Defendants pursuant to Federal Rule of Civil Procedure 41(b).

The claims that remain following entry of this Order are:

Count 1:     Civil conspiracy against all unknown Defendants, except unknown Defendant Nurse, for group participation in the May 11, 2014 assault.

Count 3:     Eighth Amendment excessive force claim against unknown Defendants #1 and #2.

Count 4:     Eighth Amendment failure to protect claim against unknown Defendants #2, #3, and #4.

Count 5:     Assault and battery claims against unknown Defendants #1 and #2.

Count 6:     Eighth amendment deliberate indifference claim against all unknown Defendants including unknown Defendant Nurse.

Count 7:     State law negligence claim against all non-medical unknown Defendants for conduct in Count 6.

## E.    CONCLUSION

For the reasons delineated above, the Court **GRANTS** Defendants' motion for exhaustion-based summary judgment and **DISMISSES without prejudice** the claims against Defendants Raymond Allen, Kent Brookman, Kimberly Butler, Nathaniel Maue, William Qualls, Ryan Sadler, Michael Samuel, Michael Schnicker, Tina Monroe, and Wesley Monroe.

Remaining as Defendants are unknown Defendant Nurse, unknown Defendants John Doe #1, #2, #3, and #4, plus Warden Kimberly Butler (who stays in the case only to help identify the unknown Defendants).

Plaintiff is given **until** <u>September 25, 2015</u> to identify unknown Defendant Nurse, John Doe #1, John Doe #2, John Doe #3, and John Doe #4.   Failure to do so **will result in dismissal** of Plaintiff's remaining claims against these unknown individuals/Defendants.

IT IS SO ORDERED.

DATED August 26, 2015.

<u>s/ *Michael J. Reagan*   </u>
Michael J. Reagan
United States District Judge