IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DAVID ROBERT BENTZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No.   14-cv-562-MJR-SCW |
| | ) |
| ADAM TOPE and JACOB GUETERSLOH, | ) |
| | ) |
| Defendants. | ) |

<u>REPORT AND RECOMMENDATION</u>

**WILLIAMS, Magistrate Judge:**

### INTRODUCTION

Pursuant to 42 U.S.C. § 1983, *pro se* Plaintiff David Robert Bentz, currently incarcerated at Menard Correctional Center, sued several defendants for violations of his constitutional rights.  Specifically, Plaintiff alleges that he was assaulted on May 11, 2014 by Defendants Maue, Qualls, Tope, and Guttersloh (Tope and Guttersloh being known formerly as John Doe #'s 1 and 2), and that various other Defendants failed to protect him or were deliberately indifferent to his serious medical needs for injuries he received as a result of the assault.  The Court previously dismissed all of the named Defendants for failure to exhaust administrative remedies against them (Doc. 104).  At that time, the Court Ordered Plaintiff to identify the unknown Defendant Nurse, and John Doe #'s 1, 2, 3, and 4.  Plaintiff subsequently identified Jeremy Butler as the unknown nurse and identified John Doe #1 as Adam Tope and John Doe #2 as Jacob

Guetersloh. Plaintiff never identified John Doe #3 or #4 and those two Defendants have since been dismissed (Doc. 164). Defendant Jeremy Butler was later dismissed for Plaintiff's failure to exhaust administrative remedies against him (Doc. 165). The only remaining Defendants are Adam Tope and Jacob Guetersloh.

This matter is before the Court on a motion for summary judgment on the basis of failure to exhaust administrative remedies filed by Defendants Tope and Guetersloh (Docs. 176 and 177). Plaintiff has filed a response (Docs. 186 and195) in opposition to the motion. Defendants have filed a reply (Docs. 190 and 198). The matter has now been referred to United States Magistrate Judge Stephen C. Williams by United States District Judge Michael J. Reagan pursuant to **28 U.S.C. §§ 636(b)(1)(B) and (c)**, **Federal Rule of Civil Procedure 72(b)**, and **Local Rule 72.1(a)**. The undersigned held an evidentiary hearing on January 11, 2017. Based on the following, the undersigned **RECOMMENDS** that the Court **GRANT** Defendants' motion for summary judgment.

FACTUAL BACKGROUND

A. Procedural and Factual Background

Plaintiff's complaint alleges that several prison officials assaulted him on May 11, 2014. The only Defendants which remain in the case are Adam Tope and Jacob Guetersloh. Plaintiff's complaint alleges that Adam Tope and Jacob Guetersloh conspired in the May 11, 2014 assault (Count 1), that the two defendants used excessive force against Plaintiff on May 11, 2014 (Count 2), that Jacob Guetersloh failed to protect Plaintiff (Count 4), that Defendants Tope and Guetersloh committed an assault and

battery against Plaintiff (Count 5), that Tope and Guetersloh were deliberately indifferent to Plaintiff's injuries following the assault (Count 6), and that Tope's and Guetersloh's actions in failing to obtain medical treatment for Plaintiff amounted to negligence (Count 7).  This matter arises before the Court on Tope and Guetersloh's motion for summary judgment on the basis that Plaintiff failed to exhaust his administrative remedies.

Plaintiff testified that he filed an emergency grievance on May 12, 2014, that was dated May 11, 2014 and that grieved the excessive force used by Defendants Tope and Guetersloh (Doc. 186, p. 1).  The emergency grievance logs do not include this emergency grievance (Doc. 77-1, 77-2, 77-3).  The logs only contain an emergency grievance that was received on May 21, 2014 and sent to the warden (Doc. 77-2, p. 2). This grievance involved the alleged assault by staff which is coded at 7c.  That grievance was also dated May 16, 2014, the same date as his complaint (Doc. 77-3, p. 1). Although the grievance was deemed not an emergency, Plaintiff's counselor informed Plaintiff on May 22, 2014 that the grievance was forwarded to Internal Affairs since it alleged a staff assault (*Id*.).  Defendants argue that there is no evidence that a grievance on the assault was submitted on May 12, 2014, as Plaintiff alleged, and he filed his complaint on May 16, 2014 so that even if he had submitted the grievance on May 12, 2014, he did not wait enough time for the grievance to be returned before filing suit.

Plaintiff argues in his response that he did not have to wait for his May 11, 2014 grievance to be returned to him because he knew that it had been destroyed by staff and

would not be reviewed by the warden. Plaintiff indicated in his responsive brief that during a line movement on May 13, 2014 he was told by Officer Brookman that his emergency grievance turned in the day before had been deposited to the trash can (Doc. 186, p. 2). Plaintiff argues that at that point the grievance process was exhausted as his grievance was destroyed, thus making the grievance process unavailable to him.

The Court had previously dealt with the grievances at issue in this motion in deciding two previously filed summary judgment motions by other Defendants on the issue of administrative exhaustion. The Court originally dismissed all of the then named Defendants by failing to await a ruling on a grievance dated May 16, 2014, which Plaintiff filed as an emergency grievance with the warden. The grievance was listed as received by the warden on May 21, 2014 (Doc. 77-2, p. 2) and records indicated that the grievance was returned on May 22, 2014 (Doc. 77-2, p. 2; Doc. 77-3, p. 1), although Plaintiff disputed that the grievance was returned to him. Ultimately, the Court found that Plaintiff failed to await a response to the grievance by filing his complaint on May 16, 2014, prior to the warden even receiving that grievance.

In a subsequent motion for summary judgment filed by newly named Defendant Jeremy Butler, who had previously been identified as a John Doe, the Court ultimately found that Plaintiff's May 11, 2014 grievance, which Plaintiff argued he had submitted on May 12, 2014 and had been informed by Lt. Brookman that it had been destroyed on May 13, 2014, did not grieve any of the claims against Defendant Butler. The Court did not reach the issue of whether the May 11, 2014 grievance had been destroyed. In that

Order, the Court noted that Plaintiff had argued for the first time that Butler had thwarted him from pursuing his May 11, 2014 grievance by destroying it. This is not accurate. Plaintiff's response to the summary judgment motion filed by the original named Defendants *did* argue that his May 11, 2014 grievance was thrown away (Doc. 87, p. 8; 87-1, p. 5).

In response to the recently filed motion for summary judgment, Plaintiff again alleges that his May 11, 2014 grievance was destroyed by Brookman and thus he did not need to further exhaust or await a response before filing his complaint on May 16, 2014. Due to the previous misstatement about Plaintiff's stance regarding his May 11, 2014 grievance, the undersigned set the pending motion for a *Pavey* hearing, in part, to clarify the record before the Court. The undersigned further took evidence at that hearing regarding Plaintiff's May 11, 2014 grievance.

### B. *Pavey* Hearing

At the *Pavey* hearing, the undersigned acknowledged the discrepancy in the Court's Order from May 13, 2016 which stated that Plaintiff raised for the first time his argument, that he was thwarted in submitting his May 11, 2014 grievance, in response to Jeremy Butler's motion for summary judgment (Doc. 165). The undersigned acknowledged that Plaintiff had raised that issue in response to the originally filed motion for summary judgment, including in an affidavit testifying to Brookman's destruction of the grievance.

Further, at the hearing, Plaintiff testified that he filed two grievances related to

the claims in his case. He filed his original grievance, dated May 11, 2014, on May 12, 2014. He submitted his grievance through the bars of his cell for a correctional officer to place in the institutional mail. It was filed as an emergency grievance. Two copies of that grievance are in the record and Plaintiff acknowledged that each copy looks slightly different as they were handwritten copies, rather than photocopies (Doc. 161, p. 9; Doc. 87-1, p. 64). Plaintiff testified that he was later told by Brookman that his grievance was destroyed although he acknowledged that Brookman was not the correctional officer who picked up his grievance on May 11, 2014. Plaintiff later filed a grievance dated May 16, 2014 with Counselor Allsup, as she made her rounds.[1]

## LEGAL STANDARDS

Summary Judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." ***Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010).** Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). **42 U.S.C. §1997e(a).** That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail,

---

[1] The Court notes that there is a bit of discrepancy in the testimony regarding Plaintiff's second grievance. The counselor notes indicate that the grievance was dated May 16, 2014 (Doc. 77-3, p. 1). Plaintiff disputed that he filed a grievance on May 16, 2014, arguing in his response to the original summary judgment motion that he filed his grievance on May 19, 2014 (Doc. 80-1, p. 111; 87-1, p. 5). In Plaintiff's response to the next summary judgment motion as well as to the pending summary judgment motion, he acknowledged that the grievance was dated May 16, 2014 but stated that he turned it in to Allsup on May 19, 2014 (Doc. 161, p. 2; Doc. 186, p. 2). He testified at the evidentiary hearing that the grievance was dated May 16, 2014 and he handed it to Allsup when she made her rounds. The counselor's notes indicate that Allsup saw Plaintiff on May 19, 2014, although there is no indication in that record that she received a grievance from him on that date (Doc. 77-3, p. 1).

prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* **(emphasis added).** The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, **438 F.3d 804, 809 (7th Cir. 2006) (noting that '[t]his circuit has taken a strict compliance approach to exhaustion").** Exhaustion must occur before the suit is filed. *Ford v. Johnson*, **362 F.3d 395, 398 (7th Cir. 2004).** Plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, **286 F.3d 1022, 1025 (7th Cir. 2005).** Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, **438 F.3d at 809.**

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, **544 F.3d 739, 740-41(7th Cir. 2008).** Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Court set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no

> unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over.   (3)If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id*. **at 742.**

### A. Illinois Exhaustion Requirements

As an inmate confined within the Illinois Department of Corrections, Plaintiff was required to follow the regulations contained in the Illinois Department of Correction's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims.   **20 Ill. Administrative Code §504.800** *et seq***.**   The grievance procedures first require inmates to speak with the counselor about their complaint.   **20 Ill. Admin. Code §504.810(a).**   Then, if the counselor does not resolve the issue, the inmate must file a grievance form directed to the Grievance Officer within 60 days of the incident.   *Id.* The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is subject of or who is otherwise involved in the complaint.   The provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

**20 Ill. Admin. Code §504.810(a)(b).** "The Grievance Officer shall [then] consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer...[who]shall advise the offender of the decision in writing within 2 months after receipt of the written grievance, where reasonably feasible under the circumstances." **20 Ill. Admin. Code §504.830(d).** If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the Administrative Review Board ("ARB"). The grievance procedures specifically state, "[i]f after receiving the response of the Chief Administrative Officer, the offender still feels that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director within 30 days after the date of the decision. Copies of the Grievance Officer's report and the Chief Administrative Officer's decision should be attached." **20 Ill. Admin. Code §504.850(a).** "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." **20 Ill. Admin. Code §504.850(e).** "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." **20 Ill. Admin. Code §504.850(f).**

  The grievance procedures do allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the Chief Administrative Officer ("CAO") who may "[determine] that there is a

substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. **20 Ill. Admin. Code §504.840(a).** If an inmate forwards the grievance to the CAO as an emergency grievance, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him which course he has decided is necessary after reading the grievance. **20 Ill. Admin. Code §504.840(b).** Once the CAO has informed the inmate of his decision, the inmate may then appeal that decision to the ARB on an expedited basis. **20 Ill. Admin. Code §504.850(g).**

## ANALYSIS

The Court notes that the May 11, 2014 grievance at issue here is the same grievance that Plaintiff previously alleged, in response to the original, named Defendants' summary judgment motion on the issue of exhaustion, that he submitted on May 12, 2014 and never received a response on and that it was thrown away. At that time, the Court found that Plaintiff re-filed the grievance, now dated May 16, 2014, on May 19, 2014 and that the warden responded on May 22, 2014, but Plaintiff alleged that he never received the response (*Id*. at p. 11-12).

In response to a later filed motion for summary judgment by Defendant Butler (Doc. 161), Plaintiff argued that he was thwarted in exhausting his administrative remedies because he was informed by Lieutenant Brookman on May 13, 2014 that Plaintiff's May 11, 2014 grievance had been filed in the trash can and no response would be coming (Doc. 161, p. 6). Plaintiff also submitted an affidavit from fellow inmate John

Anthony Reed who testified that he heard Brookman tell Plaintiff that his grievance was put in the trash can (Doc. 161, p. 7). At that time, the Court found that Plaintiff's evidence was new evidence that he had not raised previously, but ultimately found that Plaintiff's May 11, 2014 grievance would not have exhausted Plaintiff's claims against Defendant Butler and dismissed Plaintiff's claims against Butler on those other grounds.

The undersigned now clarifies that Plaintiff did, indeed, raise the argument that his original May 11, 2014 grievance was thwarted in earlier filings. Plaintiff stated in response to the motion for summary judgment filed by the first set of Defendants that his grievance was thrown in the trash can (Doc. 87, p. 8). He also submitted an affidavit along with that motion indicating that Brookman informed him that the grievance had been "forwarded to the trash can" (Doc. 87-1, p. 5, 7). It was for this reason that the undersigned held a *Pavey* hearing in order to clarify the record before the Court and take evidence on the issue regarding the May 11, 2014 grievance. At that hearing, Plaintiff reiterated that he submitted his May 11, 2014 grievance on May 12, 2014 and that he was told by Brookman that it was destroyed. Plaintiff then filed another grievance dated May 16, 2014, virtually identical to the May 11, 2014 grievance (although a handwritten copy) with Allsup. That grievance was dated the same day that Plaintiff filed his complaint (Doc. 87-1, p. 64-65).

The undersigned acknowledges that there is a dispute of fact as to whether Plaintiff's May 11, 2014 grievance was thwarted by Brookman. Such a question of fact would usually require a *Pavey* hearing, which the undersigned held, and, if the Court

found that Plaintiff's grievance had indeed been destroyed by Brookman, then Plaintiff's attempts at grieving his claims would be deemed thwarted.  *See Walker v. Sheahan*, **526 F.3d 973, 979 (7th Cir. 2000) (an inmate is not required to appeal his grievance if he submits the grievance to the proper authorities but never receives a response);** *Dole v. Chandler*, **438 F.3d 804, 809 (7th Cir. 2006) (a remedy can be unavailable to a prisoner if the prison does not respond to the grievance or uses misconduct to prevent a prisoner from exhausting his resources);** *Brown v. Darnold*, **2010 WL 3702373, at \*3 (S.D. Ill. 2010) ("The Seventh Circuit has held that administrative remedies become 'unavailable' when prison officials fail to respond to inmate grievances." (quoting** *Lewis v. Washington*, **300 F.3d 829, 833 (7th Cir. 2002)).**

However, the Court need not decide whether Plaintiff's testimony, regarding his May 11, 2014 grievance, is credible or whether he was, indeed, thwarted in submitted his May 11, 2014 grievance by Brookman, as Plaintiff filed a subsequent emergency grievance to the warden for review.  Plaintiff testified at the hearing that he wrote another grievance on May 16, 2014 and submitted that grievance as an emergency grievance to the warden.  That grievance was received by the warden and deemed not an emergency.  Plaintiff pursued this grievance simultaneously while filing his complaint, which was also filed on May 16, 2014.  This May 16, 2014 grievance constituted a newly filed grievance on the claims raised in his complaint which had to be fully exhausted before filing his complaint.  Once he submitted his May 16, 2014 grievance, he could not continue to rely on his argument that he never received a

response to his May 11, 2014 grievance or that said grievance was destroyed as a basis for filing his complaint as he chose to pursue a new grievance. *See Gilbert v. Hodge*, **Case No. 15-cv-288-MJR-SCW (Doc. 127 at p. 13-14; Entered April 25, 2016).** Thus, Plaintiff had to wait for a ruling on that grievance before filing his complaint. While Plaintiff argues that he never received a response to the May 16, 2014 grievance, the grievance had not even been received by the warden at the time he filed his complaint. Whether that grievance was returned is an issue of fact that the Court need not resolve as Plaintiff filed his complaint simultaneously with his May 16, 2014 emergency grievance, prior to even allowing the warden time to respond. As such, the undersigned finds that Plaintiff filed his complaint too soon and failed to exhaust his administrative remedies prior to filing suit.

## Conclusion

Accordingly, the undersigned **RECOMMENDS** that the Court **GRANT** Defendants' motion for summary judgment and **DISMISS without prejudice** Plaintiff's remaining claims against Defendants Tope and Guetersloh. Such a dismissal is without prejudice and Plaintiff could refile his complaint on the basis of his May 16, 2014 grievance. Whether *that* grievance was properly exhausted would be an issue that would have to be addressed in any subsequently filed case.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1(b), the parties may object to any or all of the proposed dispositive findings in this Recommendation. The failure to file a timely objection may result in the waiver of the right to challenge this

Recommendation before either the District Court or the Court of Appeals.  *See, e.g.,* *Snyder v. Nolen*, **380 F.3d 279, 284 (7th Cir. 2004).**  Accordingly, Objections to this Report and Recommendation must be filed on or before **February 6, 2017.**

**IT IS SO ORDERED**.
DATED: January 18, 2017.

> */s/ Stephen C. Williams*
> STEPHEN C. WILLIAMS
> United States Magistrate Judge