IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DAVID ROBERT BENTZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 14-cv-0562-MJR-SCW |
| | ) |
| ADAM TOPE and | ) |
| JACOB GUETERSLOH, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

**REAGAN, Chief Judge:**

**I.   INTRODUCTION**

In May of 2014, David Bentz, an inmate at Menard Correctional Center proceeding pro se, filed suit in this Court under 42 U.S.C. 1983. Bentz alleged various federal constitutional violations against a number of correctional officials. The claims included, inter alia, failure to protect, excessive force, deliberate indifference to serious medical needs, and retaliation. On threshold merits review of the complaint, the undersigned dismissed certain claims and defendants (*see* Doc. 5). Later Orders dismissed without prejudice additional defendants based on Plaintiff's failure to exhaust administrative remedies against them before filing suit and his failure to timely identify "John Doe" unknown parties (*see* Docs. 104, 164, 165).

After the Court's May 14, 2016 Order (Doc. 65), remaining herein are Adam Tope and Jacob Guetersloh, who were substituted for John Doe 1 and 2. Plaintiff alleged that Tope and Guetersloh conspired in a May 11, 2014 assault against him, that Tope and

Guetersloh used excessive force against him, that Guetersloh failed to protect Plaintiff, that Tope and Guetersloh committed assault and battery on him, that they were deliberately indifferent to his injuries after the attack, and that their actions in failing to obtain medical treatment for Plaintiff amounted to negligence.

Now before the Court is an exhaustion-based summary judgment motion filed by Tope and Guetersloh (collectively referred to herein as "Defendants") with a supporting memorandum (Docs. 176-177). Plaintiff responded in opposition (Docs. 186, 195). Defendants replied thereto (Docs. 190, 198). The Honorable Stephen C. Williams, to whom the case is referred for pretrial proceedings, conducted an evidentiary hearing on the motion on January 11, 2017 and ordered a transcript of the hearing prepared.

On January 18, 2017, Judge Williams submitted a detailed Report and Recommendation (R&R, Doc. 216), recommending that the undersigned Chief District Judge grant Defendants' summary judgment motion. Plaintiff timely objected to the R&R on January 27, 2017 (Doc. 218) and, one week prior to that, filed a "Supplement" (Doc. 217) which the Court considers with the objection. Defendants responded to Plaintiff's objection on February 15, 2017 (Doc. 222). Timely objections having been filed, the District Judge undertakes de novo review of the portions of the Report to which Plaintiff specifically objected. **28 U.S.C. 636(b)(1)(C)("A judge … shall make a de novo determination of those portions of the report … to which objection is made."); FED. R. CIV. P. 72(b); SDIL LOCAL RULE 73.1(b).** The undersigned can accept, reject, or modify the recommendations made by Judge Williams, receive further evidence, or recommit the matter to Judge Williams with instructions. *Id.*

Page | 2

The allegations of assault, battery, excessive force, and deliberate indifference are troubling, but the Court cannot reach the merits of those claims unless Plaintiff fully exhausted his administrative remedies *before* he filed this suit. For the reasons explained below, the undersigned concludes that Plaintiff did not fully exhaust before commencing this lawsuit. The Court overrules Plaintiff's objections and adopts Judge Williams' R&R in its entirety. Analysis begins with reference to the applicable legal standards.

## II. APPLICABLE LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is proper only "if the admissible evidence considered as a whole shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." ***Dynegy Mktg. & Trade v. Multi Corp.*, 648 F.3d 506, 517 (7th Cir. 2011) (internal quotation marks omitted),** *citing* **FED. R. CIV. P. 56(a).** *See also Ruffin-Thompkins v. Experian Info. Solutions, Inc.*, **422 F.3d 603, 607 (7th Cir. 2005).**

The party seeking summary judgment bears the initial burden of showing -- based on the pleadings, affidavits, and/or information obtained via discovery -- the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, **477 U.S. 317, 323 (1986).** After a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 250 (1986),** *quoting* **FED R. CIV. P. 56(e)(2).** A fact is material if it is outcome determinative under applicable law. *Anderson*, **477**

U.S. at 248; *Ballance v. City of Springfield, Ill. Police Department*, **424 F.3d 614, 616 (7th Cir. 2005);** *Hottenroth v. Village of Slinger*, **388 F.3d 1015, 1027 (7th Cir. 2004).** A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, **477 U.S. at 248.**

Generally a district court's role on summary judgment is not to evaluate the weight of the evidence, judge witness credibility, or determine the truth of the matter. It is only to determine whether a general issue of triable fact exists. *Nat'l Athletic Sportwear Inc. v. Westfield Ins. Co.*, **528 F.3d 508, 512 (7th Cir. 2008)**. But a slightly different standard applies to summary judgment on the issue of exhaustion. A motion for summary judgment based upon failure to exhaust administrative remedies often involves a hearing to determine contested issues regarding exhaustion, and the judge may make limited findings of fact at that time. *Pavey v. Conley*, **544 F.3d 739, 742 (7th Cir. 2008).** The case may proceed on the merits only after any contested issue of exhaustion is resolved. *Pavey*, **544 F.3d at 742.**

  B.  **Exhaustion Under the PLRA**

Lawsuits brought by prisoners are governed by the Prison Litigation Reform Act (PLRA), 42 U.S.C 1997e. The PLRA requires that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until … administrative remedies as are available are exhausted." **42 U.S.C. 1997e(a).**

Exhaustion is a condition precedent to suit in federal court, so the inmate must exhaust before he commences his federal litigation; he cannot exhaust *while* his lawsuit

is pending. *See Perez v. Wisconsin Department of Corrections*, **182 F.3d 532, 535 (7th Cir. 1999);** *Dixon v. Page*, **291 F.3d 485, 488 (7th Cir. 2002).** If the inmate fails to exhaust before filing suit in federal court, the district court must dismiss the suit. *See Jones v. Bock,* **549 U.S. 199, 223 (2007);** *Burrell v. Powers*, **431 F.3d 282, 284-85 (7th Cir. 2005).**[1]

The Court of Appeals for the Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *See Dole v. Chandler*, **438 F.3d 804, 809 (7th Cir. 2006) ('This circuit has taken a strict compliance approach to exhaustion").** "Unless a prisoner completes the administrative process by following rules the state has established for that process, exhaustion has not occurred." *Pozo v. McCaughtry*, **286 F.3d 1022, 1025 (7th Cir. 2002).** This includes the filing of "complaints and appeals in the place, and at the time, the prison's rules require." *Id*. **at 1025.** If the prisoner fails to comply with the established procedures, including time restraints, the court may not consider the claims. *Pavey v. Conley*, **663 F.3d 899, 903 (7th Cir. 2011).**

The purpose of the exhaustion requirement is two-fold. First, it gives the prison officials the chance to address the prisoner's claims internally, before any litigation becomes necessary. *Kaba v. Stepp*, **458 F.3d 678, 684 (7th Cir. 2006);** *Woodford v. Ngo*, **548 U.S. 81, 89-90 (2006).** Second, it "seeks to reduce the quantity and improve the quality of prisoner suits." *Porter v. Nussle*, **534 U.S. 516, 524 (2002).** *See also Booth v. Churner*, **532 U.S. 731, 737 (2001).**

---

[1] Although *dismissal* is the procedural step the district court takes if a plaintiff failed to exhaust prior to filing suit, the issue of exhaustion most often is raised via summary judgment motion, so that the Court can consider evidence "outside the pleadings," such as affidavits, grievances, responses, appeals, and related documentation. *See* **Fed. R. Civ. P. 12(d).**

Because exhaustion is a prerequisite to filing a suit, a prisoner must wait to commence litigation until he has completed the established process; he may not file in anticipation of administrative remedies soon being exhausted. *Perez*, **182 F.3d at 535,** *citing* **42 U.S.C 1997e(a);** *Ford v. Johnson***, 362 F.3d 395, 398 (7th Cir. 2004).** A suit filed prior to exhaustion of available remedies will be dismissed even if the remedies become exhausted *while* the suit is pending. *Perez***, 182 F.3d at 535.**[2]

The exhaustion requirement is an affirmative defense, on which defendants bear the burden of proof. *Pavey v. Conley***, 663 F.3d 899, 903 (7th Cir. 2011).** "[D]ebatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley***, 544 F.3d 739, 740-41 (7th Cir. 2008).** Where failure to exhaust has been raised as an affirmative defense (i.e., exhaustion is contested), the district court should follow this sequence (*id.***, 544 F.3d at 742**):

> (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate.
> (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over.

---

[2] Exhaustion-based dismissals under the PLRA must be *without* prejudice, even if exhausting now may prove to be impossible. *See, e.g., Fluker v. County of Kankakee,* **741 F.3d 787, 791-92 (7th Cir. 2013),** *citing Ford v. Johnson,* **362 F.3d 395, 400-01 (7th Cir. 2004).**

> (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

Defendants raised this affirmative defense in their January 2016 answer herein (Doc. 144, p. 27).

The PLRA's exhaustion requirement is dependent upon the procedures established by the state in which the prison is located. *Jones*, **549 U.S. at 218.** Plaintiff Bentz was confined at Menard, within the Illinois Department of Corrections (IDOC).

### C. Exhaustion Under Illinois Law

As an IDOC inmate, Plaintiff was required to follow the regulations contained in the IDOC's Grievance Procedures for Offenders to properly exhaust his claims. **20 Ill. Admin. Code 504.800,** *et seq*. The grievance procedures first require inmates to speak with their Counselor about the issue or problem. **20 Ill. Admin. Code 504.810(a).** If the Counselor does not resolve the issue, the inmate must file a grievance within sixty days of the events or occurrence with the Grievance Officer. *Id.* The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is subject of or who is otherwise involved in the complaint. The provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

**20 Ill. Admin. Code 504.810(b).**

"The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer ... [who]

shall advise the offender of the decision in writing within 2 months after receipt of the written grievance, where reasonably feasible under the circumstances." **20 Ill. Admin. Code 504.830(d).** If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the ARB. More specifically: "If after receiving the response of the Chief Administrative Officer, the offender still feels that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director within 30 days after the date of the decision. Copies of the Grievance Officer's report and the Chief Administrative Officer's decision should be attached." **20 Ill. Admin. Code 504.850(a).**

"The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." **20 Ill. Admin. Code 504.850(e).** "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." **20 Ill. Admin. Code 504.850(f).**

The grievance procedures also allow for an inmate to file an emergency grievance. To file an emergency grievance, the inmate must forward the grievance directly to the Chief Administrative Officer (CAO) who may determine that "there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. **20 Ill. Admin. Code 504.840(a).** If an inmate forwards the grievance to the CAO as an emergency grievance, the CAO "shall expedite processing of the grievance and respond

to the offender" indicating to him which course he has decided is necessary after reading the grievance. **20 Ill. Admin. Code 504.840(b).** Once the CAO has informed the inmate of his decision, the inmate may then appeal that decision to the ARB on an expedited basis. **20 Ill. Admin. Code 504.850(g).** A final decision of the ARB will exhaust the grievance requirement.

In certain circumstances, a prisoner may exhaust his remedies by filing a grievance directly with the ARB. **20 Ill. Adm. Code 504.870**. Those circumstances include grievances addressing (1) placement in protective custody, (2) involuntary administration of psychotropic medication, (3) decisions regarding disciplinary proceedings that took place at an institution other than where the inmate currently resides, and (4) all other issues, with the exception of personal property issues, that occurred at a previous institution. *Id.*

### III. OVERVIEW OF EVIDENCE AND ARGUMENTS

Central to Plaintiff's complaint is the allegation that several prison officials assaulted him on May 11, 2014. Plaintiff claims that Guetersloh failed to protect him and that Tope and Guetersloh both conspired in the assault, used excessive force against him, assaulted and battered him, and denied him medical treatment. At the hearing before Judge Williams, Plaintiff testified that he filed an emergency grievance on May 12, 2014 (a grievance dated **May 11, 2014** that complained of, inter alia, excessive force by Tope and Guetersloh). The logs introduced in evidence do not include this grievance but *do* contain an emergency grievance dated **May 16, 2014**, received May 21, 2014, and sent to the warden. That grievance involved an allegation of

Page | 9

assault by staff. This grievance was deemed by the CAO to *not* be an emergency, but Plaintiff's counselor told Plaintiff on May 22, 2014 that the grievance was forwarded to Internal Affairs because it alleged an assault or misconduct by staff.

In seeking summary judgment, Defendants argue that (a) there is no evidence to support Plaintiff's allegation that he filed a grievance on May 12, 2014 as he claimed, and (b) even if he did so, he did not wait long enough before filing this lawsuit on May 16, 2014. Plaintiff responds that he did not have to wait for the May 12-filed grievance to be returned to him, because he already knew it was destroyed by staff and would never make it to or be reviewed by the warden. Plaintiff maintained that on May 13, 2014, he was told by Correctional Officer Brookman that the grievance Plaintiff submitted the day before had been deposited in a trash can. Thus, reasons Plaintiff, the destruction of his grievance rendered the grievance process unavailable to him, so he had completely exhausted the grievance.

Prior Orders on motions filed by other defendants herein referenced the alleged destruction of the May 11, 2014 grievance, but the Court did not at that point resolve the question of whether that grievance was destroyed by prison staff. It bears note that prior Orders inaccurately stated the date when Plaintiff first raised the argument that his exhaustion effort was *thwarted* by the destruction of the May 11, 2014 grievance. At the ***Pavey*** hearing, Judge Williams received evidence needed to resolve this point.

Plaintiff testified that he filed two separate grievances related to the claims in this case, the first being the emergency grievance dated May 11, 2014 and filed May 12, 2014 (submitted through the bars of his cell for a correctional officer to place in the prison

mail system). Two copies of this grievance are in the record before this Court (Doc. 87-1, p. 64 and Doc. 161, p. 9). Both are documents handwritten by Plaintiff, signed by him and dated May 11, 2014. Neither contains any writing or data in the spots marked for "Counselor's Response" or CAO signature, etc. This is the grievance Plaintiff says C/O Brookman destroyed. As noted above, the grievance logs do not reflect a May 11 or 12, 2014 grievance (*see* Doc. 77-2).

The evidence reflects a slight discrepancy as to the date of what Plaintiff calls the *second* grievance. The record indicates it was dated May 16, 2014 and filed via submission to Counselor Krista Allsup as she made rounds through the prison galleries.[3] The logs record an emergency grievance alleging staff assault of Plaintiff – that grievance was dated May 16, 2014, received May 21, 2014, sent to the warden, found by the CAO to *not* be an "emergency" and forwarded to Internal Affairs for investigation. Likewise, a sworn declaration of Grievance Officer David Dwight attests that Plaintiff submitted a grievance about staff misconduct that was received May 21, 2014, deemed not to be an emergency by the CAO, returned to Plaintiff on May 22, 2014, and referred to Internal Affairs per the Warden – "Emergency Grievance E52-May," which this Court refers to hereinafter as **Grievance E52** (*see* Doc. 77-1, pp. 2-3).

---

[3] The notes referenced in the R&R (Doc. 216, p. 6)("Cumulative Counseling Summary at Doc. 77-3, p. 1) say that the grievance was dated May 16, 2014. In response to earlier motions herein, Plaintiff first took the position that this grievance was filed on May 16, 2014 and later said it was filed on May 19, 2014. At the *Pavey* hearing before Judge Williams, Plaintiff testified that the grievance was *dated* May 16th and *filed* (submitted to Allsup) on May 19, 2014. The record of Allsup's May 19, 2014 rounds--which document a face-to-face encounter between Allsup and Plaintiff during which Plaintiff "indicated that he was doing ok"-- do not reflect receipt of a grievance from Plaintiff that day.

### IV. ANALYSIS

Defendants contend that even if Plaintiff submitted the *first* grievance (a grievance he says was dated May 11, 2014 and submitted on May 12, 2014), he did not exhaust his administrative remedies as to that grievance, because he waited only four days before filing this lawsuit on May 16, 2014 – not long enough to claim his remedies were made unavailable (Doc. 177, p. 3). The "second" grievance – Grievance E52 – was dated May 16, 2014 and received on May 21, 2014. The receipt date is *after* Plaintiff filed suit in this Court complaining of the events at issue in Grievance E52, so (argue Defendants) that grievance certainly did not exhaust Plaintiff's administrative remedies prior to his complaint being filed.

Throughout this litigation up through his objection to the R&R (Doc. 218), Plaintiff has maintained that he submitted a grievance on May 12, 2014 (a grievance dated May 11, 2014 complaining of the May 11th attack), that he never received a response to that grievance, that he was informed that the grievance had been thrown away, and that Plaintiff should be found to have fully exhausted his administrative remedies, because his efforts to grieve his claims were thwarted by prison officials. Plaintiff insists that C/O Brookman put the May 12th grievance in the trash on May 13, 2014, and thus "Plaintiff's first grievance was in fact fully exhausted on May 13, 2014 (Doc. 218, p. 2).

Obviously, a fact issue exists as to whether Plaintiff submitted a grievance on May 12, 2014 that was destroyed by Brookman or some other Menard staff. The undersigned concludes, as did Judge Williams, that the Court need not decide whether

Page | 12

Plaintiff's testimony regarding the existing of the May 11 grievance is credible, or whether he was in fact hindered in or prevented from pursuing the May 11 grievance. By his own testimony at the *Pavey* hearing (buttressed by the records before the Court), Plaintiff wrote another grievance on May 16, 2014 and submitted that as an emergency grievance to the warden. E52 was a newly-filed grievance directed at the claims raised in this lawsuit, and Plaintiff was required to fully exhaust *that* grievance before filing this action. He did not do so.

Plaintiff (perhaps wisely) chose to pursue a new grievance by submitting Grievance E52. Once he took that path, he had to wait a reasonable time for a ruling on *that* grievance before he filed his complaint herein. Whatever happened with the return (or lack thereof) of Grievance E52 to Plaintiff was – for the purposes of the exhaustion analysis – rendered irrelevant by Plaintiff filing this lawsuit on May 16, 2014, before the warden had even received Grievance E52 or had a chance to resolve it.

Simply put, Plaintiff jumped the gun by simultaneously filing his May 16, 2014 complaint in this Court and submitting his May 16, 2014 emergency grievance (without letting the warden even have one day to respond). Plaintiff had to wait a reasonable time for something to happen on his May 16, 2014 emergency grievance before starting this federal lawsuit. He filed this suit the very day he dated Grievance E52 (5/16/14). That was five days before the warden even received E52. And assuming, arguendo, that Plaintiff submitted a grievance May 12th that was destroyed on May 13th, he then penned Grievance E52; having opted to pursue E52, he needed to allow a period of time for resolution of that grievance before filing this federal lawsuit.

Plaintiff did not fully exhaust his administrative remedies against Defendants Tope and Guetersloh before filing this action, so the PLRA requires the Court to dismiss these claims without prejudice. The undersigned emphasizes that the dismissal of Plaintiff's remaining claims against Tope and Guetersloh is *without* prejudice, leaving Plaintiff free to file a complaint based on the May 16, 2014 grievance.

As Judge Williams pointed out, whether that grievance (Grievance E52) was fully exhausted before a new lawsuit's filing date is a question that would have to be addressed in the subsequently-filed case. The Court's exhaustion ruling here rests on the fact Plaintiff chose to file Grievance E52 and *the very same day* file his complaint in this Court, without allowing any time for administrative remedies to be exhausted or rendered unavailable.

### V. CONCLUSION

For the reasons stated above, the Court overrules Plaintiff's objections (Docs. 217-218), adopts Judge Williams' R&R (Doc. 216), **GRANTS** the *Pavey* motion (Doc. 176), and **DISMISSES WITHOUT PREJUDICE** Plaintiff's claims against Defendants Tope and Guetersloh.

No claims remain herein, all other claims having been dismissed (some with and some without prejudice) in Orders dated May 21, 2014 (Doc. 5), August 26, 2015 (Doc. 104), November 3, 2015 (Doc. 124), and May 13, 2016 (Doc. 165). The dismissal of the final claims herein **CANCELS** all settings. The Clerk of Court shall enter judgment and close the case.

IT IS SO ORDERED.

DATED: February 22, 2017.

***s/ Michael J. Reagan***
Michael J. Reagan
United States District Judge
